**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

------------------------------------------------------------X
Atikur R. Khan
Rubyna Khan,

                Plaintiffs,

    vs.

PHH MORTGAGE CORPORATION, a New Jersey
Corporation; CITIBANK, National Association, AS
TRUSTEE FOR GSAA HOME EQUITY TRUST
2007-9; AZTEC FORECLOSURE
CORPORATION, a California Corporation, and all
persons or entities unknown claiming any legal or
equitable right, title, estate, lien or interest in the
property described in this complaint adverse to
Plaintiffs' title thereto, and DOES 1 through 25,
inclusive,

                Defendants.

------------------------------------------------------------X

Western Division:

Case No.

**NOTICE OF REMOVAL**

## NOTICE OF REMOVAL

      Defendant, Citibank, National Association, as Trustee for GSAA Home Equity Trust 2007-9 ("Citibank"), pursuant to 28 U.S.C. §§ 1332(a)(1) and 1441, hereby files this Notice of Removal and removes to this United States District Court an action which is pending in the Superior Court of California in and for Los Angeles County, Case No. VC064664. Removal is proper as this Court has original jurisdiction based on diversity of citizenship.

### BACKGROUND

      1.      On or about March 19, 2015, Plaintiffs, Atikur R. Khan and Rubyna Khan ("Plaintiffs"), filed an action styled: *Atikur R. Khan and Rubyna Khan v. PHH Mortgage Corporation, a New Jersey Corporation; Citibank, National Association, as Trustee for GSAA Home Equity Trust 2007-9; Aztec Foreclosure Corporation, a California Corporation, and all persons or entities unknown claiming any legal or equitable right, title, estate, lien or interest in the property described in the complaint adverse to Plaintiff's title thereto, and Does 1 through 25, inclusive*, Case No.: VC064664, in the Superior Court of California in and for Los Angeles

Ballard Spahr LLP
2029 Century Park East, Suite 800
Los Angeles, CA 90067-2909

County.

2.      Citibank first received a copy of the complaint on March 30, 2015. Plaintiff served Defendant PHH Mortgage Corporation ("PHH") on March 26, 2015. Upon information and belief, Plaintiff has not yet served Defendant Aztec Foreclosure Corporation[1]. A true and correct copy of the Complaint is attached hereto as Exhibit A.

3.      Citibank now timely files this Notice of Removal within 30 days of receipt by any of the Defendants of service of the Complaint in accordance with 28 U.S.C. § 1446(b)[2].

## **PARTIES**

4.      Plaintiffs are adult individuals residing at 16206 Alpine Place, La Mirada, CA 90638.  See Complaint ¶ 3.  For purposes of diversity jurisdiction, Plaintiffs are citizens of California.

5.      PHH is a New Jersey corporation with its principal place of business located in New Jersey.  Thus, PHH is a citizen of New Jersey for purposes of diversity jurisdiction.  28 U.S.C. § 1332(c)(1).

6.      Citibank is a national bank with its home office located in South Dakota. Thus, Citibank is a citizen of South Dakota for the purposes of diversity jurisdiction.  See Wachovia Bank v. Schmidt, 546 U.S. 303, 318-19 (2006).

7.      Upon information and belief, Aztec Foreclosure Corporation is an Arizona corporation with its primary place of business located in Arizona[3]. Thus, Aztec Foreclosure Corporation is a citizen of Arizona for the purposes of diversity jurisdiction. 28 U.S.C. § 1332(c)(1).

---

[1] Although Aztec Foreclosure Corporation has consented to removal, its consent to removal is not actually required because it has not been served. See Destfino v. Reiswig, 630 F.3d 952, 956, 2011 U.S. App. LEXIS 1375, 8 (9th Cir. Cal. 2011 (noting that "[a]ll defendants who have been "properly served in the action" must join a petition for removal") (citing Emrich v. Touche Ross & Co., 846 F.2d 1190, 1193 n.1 (9th Cir. 1988).

[2] The Ninth Circuit applies the "later served rule," which holds that "each defendant is entitled to thirty days to exercise his removal rights after being served." See Destfino v. Reiswig, 630 F.3d 952, 956, 2011 U.S. App. LEXIS 1375, 8 (9th Cir. Cal. 2011) ("[t]here is no reason to lock an earlier-served defendant out of the federal forum, if he later chooses to consent.").

[3] Plaintiffs erroneously aver that Aztec Foreclosure Corporation is a California corporation. See Complaint ¶ 6.

Ballard Spahr LLP
2029 Century Park East, Suite 800
Los Angeles, CA  90067-2909

**THE COMPLAINT**

8.     The action was filed prior to a scheduled trustee's sale of real property located at 16206 Alpine Place, La Miranda, CA 90638 (the "Property").  <u>See</u> Complaint ¶ 57.

9.     Plaintiffs allege that PHH failed to review their loss mitigation applications in violation of several statutes under California Homeowner's Bill of Rights, and based thereon, seek to enjoin the scheduled foreclosure sale, as well as monetary damages and other relief. <u>See</u> Complaint ¶¶ 14-60.

10.     More specifically, Plaintiffs allege that Defendants are liable for violations of Cal. Civ. Code § 2923.6; Cal. Civ. Code § 2923.55; Cal. Civ. Code § 2924.9; Cal. Civ. Code § 2924.10; Cal. Civ. Code § 2923.7; Cal. Civ. Code § 2924(a)(6); Cal Bus & Prof. Code §§ 17200, <u>et seq.</u>; as well as for negligence, breach of the implied covenant of good faith and fair dealing, quiet title, and declaratory relief. <u>See</u> Complaint ¶¶ 61-185.

11.     Based thereon, Plaintiffs pray for injunctive relief, asking the Court to enter an order enjoining the trustee's sale, along with compensatory damages, special damages, punitive damages, statutory damages, attorney's fees and costs of suit, and pre and post judgment interest. <u>See</u> Complaint pp. 33-34.

**DIVERSITY JURISDICTION**

12.     Pursuant to 28 U.S.C. § 1441(a), "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending."  It is axiomatic that "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between….citizens of different states." 28 U.S.C. § 1332(a)(1).

13.     The Court plainly has diversity jurisdiction.  Plaintiffs are citizens of California and Defendants are Citizens of New Jersey, South Dakota, and Arizona.  <u>See</u> Complaint ¶ 3.

Ballard Spahr LLP
2029 Century Park East, Suite 800
Los Angeles, CA 90067-2909

14.     The amount in controversy is also easily satisfied as the Complaint concerns the sale of the Property, which Plaintiffs' purchased by obtaining a loan in the original principal amount of $750,000.00. <u>See</u> Complaint ¶ 14.

15.     The Plaintiff's loan is evidenced by a promissory note executed May 25, 2007, which is secured by a deed of trust executed May 25, 2007 and recorded June 1, 2007 in the Recorder's Office for Los Angeles County at Document Number 20071329880. <u>See</u> Complaint Exhibit 'A.' The original principal balance of the deed of trust is sufficient to establish that the amount in controversy is satisfied. <u>See</u> <u>Reyes v. Wells Fargo Bank, N.A.</u>, 2010 U.S. Dist. LEXIS 113821 at *14-15 (N.D. Cal. June 29, 2010)  (holding that "the value of the property is the object of the litigation for the purposes of determining whether the amount-in-controversy requirement has been met […] regardless of whether the property at issue has been sold in foreclosure or is still held by the lender […] so long as the plaintiff is seeking injunctive relief to prevent or undo the lender's sale of the property.") (<u>citing</u> <u>Garfinkle v. Wells Fargo Bank,</u> 483 F.2d 1074, 1076 (9th Cir. 1973)); <u>Cabriales v. Aurora Loan Services</u>, 2010 WL 761081, at*3 (N.D.Cal. Mar. 2, 2010) (same); <u>Garcia v. Citibank, N.A.</u> 2010 WL 1658569, at *2 (E.D.Cal. Apr. 23, 2010) (same); <u>Delgado v. Bank of America Corp.</u>, 2009 WL 4163525 at *6 (E.D.Cal. Nov. 23, 2009) (same).

## <u>PROCEDURAL REQUIREMENTS AND LOCAL RULES</u>

16.     <u>Removal to Proper Court</u>.  This Court is part of the "district and division" embracing the place where this action was filed – Los Angeles County, California.  28 U.S.C. § 1446(a).

17.     <u>Pleadings and Process</u>.  Attached hereto as Exhibit A are copies of all process, pleadings and orders served upon Citibank in the state court action.  <u>See</u> 28 U.S.C. § 1446(a).

18.     <u>Notice</u>.  Attached hereto as Exhibit B is a copy of a Notice of Filing of Notice of Removal, which will be promptly served upon Plaintiffs' counsel and filed with the Clerk of the Superior Court for the State of California, Los Angeles County.  <u>See</u> 28 U.S.C. §§ 1446(a), (d).

19.     <u>Signature</u>.  This Notice of Removal is signed pursuant to Fed. R. Civ. P. 11.  <u>See</u> 28 U.S.C. § 1446(a).

4

Ballard Spahr LLP
2029 Century Park East, Suite 800
Los Angeles, CA 90067-2909

Ballard Spahr LLP
2029 Century Park East, Suite 800
Los Angeles, CA 90067-2909

20. <u>Bond and Verification</u>. Pursuant to Section 1016 of the Judicial Improvements and Access to Justice Act of 1988, no bond is required in connection with this Notice of Removal. Pursuant to Section 1016 of the Act, this Notice need not be verified.

21. Based upon the foregoing, this Court has jurisdiction over this matter pursuant to 28 U.S.C. ¶ 1332 and this matter may be removed to this Court under 28 U.S.C. § 1441.

22. Citibank states that by filing this Notice of Removal, it does not waive any defenses to Plaintiffs' allegations or objections to personal jurisdiction, including but not limited to sufficiency of process, service of process, and jurisdiction.

23. Defendants PHH Mortgage Corporation and Aztec Foreclosure Corporation consent to the removal of this action.

**WHEREFORE,** Defendant, Citibank, National Association, as trustee for GSAA Home Equity Trust 2007-9 respectfully requests that this action be immediately removed from the Superior Court of California in and for Los Angeles County to the United States District Court for the Central District of California, Western Division.

Dated: Los Angeles, CA
      April 29, 2015

Respectfully submitted,

By:   /s/ Scott M. Pearson
     Scott M. Pearson
     BALLARD SPAHR LLP
     2029 Century Park East, Suite 800
     Los Angeles, CA 90067
     Telephone: 424.204.4400
     Facsimile: 424.204.4350
     pearsons@ballardspahr.com
     *Attorneys for Defendant PHH Mortgage*
     *Corporation & Citibank National Association,*
     *as Trustee for GSAA Home Equity Trust 2007-9*

## CERTIFICATE OF SERVICE

I, Scott Pearson, an attorney admitted to practice in the State of California, affirms under penalty of perjury:

On April  29   , 2015, I served the attached by mailing and emailing a copy to each of the following persons at the last known address set forth after each name below.

September J Katke, Esq.
Alicia Nikkhoo, Esq.
Consumer Litigation Law Center, APC
100 North Citrus Street, Suite 408
West Covina, California, 91791
sk@consumerlitigationlawcenter.com
an@consumerlitigationlawcenter.com
*Attorneys for Plaintiffs*

Janice L. Celotti, Esq.
Shapiro, Van Ess, Sherman & Marth, LLP
20 Pacifica, Suite 1460
Irvine, CA 92618
jcelotti@LOGS.com
*Attorneys for Defendant Aztec Foreclosure Corporation*

  /s/ Scott M. Pearson
Scott M. Pearson

Ballard Spahr LLP
999 Peachtree Street
Suite 1000
Atlanta, GA 30309-3915
Telephone: 678.420.9300

EXHIBIT 'A'



**CORPORATION SERVICE COMPANY**

**null / ALL**
**Transmittal Number: 13618007**
**Date Processed: 03/26/2015**

# Notice of Service of Process

| | |
|---|---|
| **Primary Contact:** | Walter Wronka<br>PHH Mortgage Corporation<br>1 Mortgage Way<br>Floor 3 Mail Stop LGL<br>Mt. Laurel, NJ 08054 |
| **Copy of transmittal only provided to:** | Janet Goldstein |

| | |
|---|---|
| **Entity:** | PHH Mortgage Corporation<br>Entity ID Number  2131683 |
| **Entity Served:** | PHH Mortgage Corporation |
| **Title of Action:** | Atikur R. Khan vs. PHH Mortgage Corporation |
| **Document(s) Type:** | Summons/Complaint |
| **Nature of Action:** | Contract |
| **Court/Agency:** | Los Angeles County Superior Court, California |
| **Case/Reference No:** | VC064664 |
| **Jurisdiction Served:** | California |
| **Date Served on CSC:** | 03/26/2015 |
| **Answer or Appearance Due:** | 30 Days |
| **Originally Served On:** | CSC |
| **How Served:** | Personal Service |
| Sender Information: | September J. Katje<br>800-787-5616 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**
*CSC is SAS70 Type II certified for its Litigation Management System.*
2711 Centerville Road   Wilmington, DE 19808   (888) 690-2882   |   sop@cscinfo.com

**By Fax**

SUM-100

# SUMMONS
## (CITACION JUDICIAL)

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

PHH MORTGAGE CORPORATION, a New Jersey Corporation;
(Additional Party Summons Attached)

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

ATIKUR R. KHAN, and RUBYNA  KHAN, individuals

**FOR COURT USE ONLY**
*(SOLO PARA USO DE LA CORTE)*

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

MAR 19 2015

Sherri R. Carter, Executive Officer/Clerk
By Angelica Silva, Deputy

COPY

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have **30 CALENDAR DAYS** after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado.  Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):* Los Angeles Superior Court

**CASE NUMBER**
*(Número del Caso):*
VC064664

Norwalk Courthouse
12720 Norwalk Blvd., Norwalk, CA 90650

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
September J. Katje 100 N. Citrus Street Suite 408, West Covina, CA 91730  (800) 787-5616

DATE: March 19, 2015  **SHERRI R. CARTER**   Clerk, by  **ANGELICA SILVA**  , Deputy
*(Fecha)*   *(Secretario)* _____   *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
1. [ ] as an individual defendant.
2. [ ] as the person sued under the fictitious name of *(specify):*

3. [✓] on behalf of *(specify):*  PHH Mortgage Corporation, a New Jersey Corporation

   under: [✓] CCP 416.10 (corporation)          [ ] CCP 416.60 (minor)
          [ ] CCP 416.20 (defunct corporation)   [ ] CCP 416.70 (conservatee)
          [ ] CCP 416.40 (association or partnership)  [ ] CCP 416.90 (authorized person)
          [ ] other *(specify):*
4. [ ] by personal delivery on *(date):*

[SEAL]

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]
SUMMONS
Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

SUM-200(A)

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Khan v. PHH MORTGAGE CORPORATION, et al. | |

### INSTRUCTIONS FOR USE

→ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.
→ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

List additional parties (Check only one box. Use a separate page for each type of party.):

☐ Plaintiff    ☑ Defendant    ☐ Cross-Complainant    ☐ Cross-Defendant

CITIBANK, a National Association, AS TRUSTEE FOR GSAA HOME EQUITY TRUST 2007-9; AZTEC FORECLOSURE CORPORATION, a California Corporation; and all persons or entities unknown claiming any legal or equitable right, title, estate, lien or interest in the property described in this complaint adverse to Plaintiffs' title thereto, and DOES 1 through 25, inclusive,

Page __2__ of __2__

Page 1 of 1

**ADDITIONAL PARTIES ATTACHMENT**
Attachment to Summons

COPY

By Fax

CONSUMER LITIGATION LAW CENTER, APC

**CONSUMER LITIGATION LAW CENTER, APC**
September J. Katje, Esq., SBN: 227896
sk@consumerlitigationlawcenter.com
Alicia Nikkhoo, Esq. SBN: 297290
an@consumerlitigationlawcenter.com
100 North Citrus Street, Suite 408
West Covina, California 91791
P: (800) 787-5616 || F: (888) 909-7947

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

MAR 19 2015

Sherri R. Carter, Executive Officer/Clerk
By Angelica Silva, Deputy

Attorneys for Plaintiffs, ATIKUR R. KHAN and RUBYNA KHAN

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**FOR THE COUNTY OF LOS ANGELES**

| | |
|---|---|
| ATIKUR R. KHAN, and RUBYNA KHAN, individuals, <br><br> Plaintiffs, <br><br> v. <br><br> PHH MORTGAGE CORPORATION, a New Jersey Corporation; CITIBANK, National Association, AS TRUSTEE FOR GSAA HOME EQUITY TRUST 2007-9; AZTEC FORECLOSURE CORPORATION, a California Corporation; and all persons or entities unknown claiming any legal or equitable right, title, estate, lien or interest in the property described in this complaint adverse to Plaintiffs' title thereto, and DOES 1 through 25, inclusive, <br><br> Defendants. | Case No.: **VC064664** <br><br> Verified Complaint For: <br><br> 1. Wrongful Foreclosure (Cal. *Civ. Code* § 2923.6) <br> 2. Failure to Engage in Loss Mitigation (Cal. *Civ. Code* § 2923.55) <br> 3. Failure to Engage in Loss Mitigation (Cal. *Civ. Code* § 2924.9) <br> 4. Failure to Engage in Loss Mitigation (Cal. *Civ. Code* § 2924.10) <br> 5. Failure to Assign a Single Point of Contact (Cal. *Civ. Code* § 2923.7) <br> 6. Wrongful Foreclosure (Violation of Cal. *Civ. Code* §2924(a)(6)) <br> 7. Violation of Cal. *Bus. & Prof. Code* §§ 17200, et seq. in Loan Servicing <br> 8. Negligence <br> 9. Breach of Implied Covenant of Good Faith and Fair Dealings <br> 10. Quiet Title <br> 11. Declaratory Relief <br><br> **And Demand For Jury Trial** <br> **Unlimited Jurisdiction** |

///

1

**VERIFIED COMPLAINT**

NOW COME the Plaintiffs, ATIKUR R. KHAN and RUBYNA KHAN ("Plaintiffs"), complaining of the Defendants, and each of them, the following:

## I.

## INTRODUCTION

1.     This is an action filed for misconduct related to Defendants' wrongful acts and omissions during the loan servicing and foreclosure process on Plaintiffs' home loan secured by deed of trust.

2.     As described below, Defendants' misconduct resulted in premature and unauthorized foreclosure proceedings, mishandling of Plaintiffs' applications for loss mitigation assistance, and an improper and illegal refusal to postpone a trustee's sale date now set on the real property that is the subject of this litigation.  Each of the allegations regarding Defendants contained herein applies to instances in which one or more, and in some cases all, of the Defendants engaged in the conduct alleged herein

## II.

## THE PARTIES

3.     Plaintiffs, ATIKUR R. KHAN and RUBYNA KHAN, are, and at all times herein mentioned, were residents of the State of California, County of Los Angeles.  Plaintiffs, at all times relevant to this Complaint, were the owner of their primary residence commonly known as 16206 Alpine Place, La Mirada, CA 90638[1] ("Subject Property").

4.     Defendant, PHH MORTGAGE CORPORATION ("PHH"), was and is a New Jersey Corporation doing business in the State of California as a residential loan lender and servicer and is the current servicer under the terms of Plaintiffs' note and deed of trust. A true and correct copy of the Notice of Assignment, Sale, or Transfer of Servicing Rights, wherein

---

[1]  Legal Description—Lot 25 of Tract §1689, in the City of La Mirada, County of Los Angeles, State of California, as per map recorded in Book 1215 pages 38 to 50 inclusive of maps, in the office of the County Recorder of said County.

APN: 8037-022-081

**VERIFIED COMPLAINT**

CONSUMER LITIGATION LAW CENTER, APC

1  PHH Mortgage Services is identified as the new servicer of Plaintiffs' Note and deed of trust
2  (collectively, "Loan Agreement"), effective July 1, 2007, is attached hereto as Exhibit "A."

3      5.      Defendant, CITIBANK, National Association, AS TRUSTEE FOR GSAA
4  HOME EQUITY TRUST 2007-9 ("Citibank Trust 2007-9") was and is a National Association
5  doing business in the State of California as a residential loan lender and servicer and is the
6  current owner and investor of Plaintiffs' note pursuant to a Corporate Assignment of Deed of
7  Trust ("Assignment"), recorded on September 17, 2013. A true and correct copy of the
8  Assignment which granted, assigned and transferred all beneficial interest under Plaintiffs'
9  Deed of Trust to Citibank Trust 2007-9 is attached hereto as Exhibit "B."

10     6.      Defendant, AZTEC FORECLOSURE CORPORATION ("Aztec Foreclosure"),
11 was and is a California Corporation, doing business in the State of California and is the current
12 trustee of record under Plaintiffs' Deed of Trust. A true and correct copy of the Notice of
13 Trustee's Sale ("NTS"), recorded on January 2, 2014, wherein Aztec Foreclosure is identified as
14 trustee, is attached hereto as Exhibit "C."

15     7.      Plaintiffs believe and thereon allege that at all times material hereto, all
16 Defendants operated through a common plan and scheme designed to conceal the material facts
17 set forth below from Plaintiffs, from the California public and from regulators, either directly or
18 as successors-in-interest or affiliates of other Defendants. The concealment was completed,
19 ratified and/or confirmed by each Defendant herein, directly or as successor, agent, assignee or
20 affiliate to another Defendant. Each Defendant was a perpetrator of the tortious acts set forth
21 herein for its own monetary gain and as a part of a common plan developed and carried out with
22 the other Defendants, or was a successor-in-interest to a Defendant that did the foregoing.

23     8.      The Defendants that knowingly participated in the scheme are jointly and
24 severally liable for their acts in devising, directing, knowingly benefitting from and ratifying the
25 wrongful acts of the knowing participants.

26     9.      Plaintiffs are ignorant of the true names and capacities of Defendants sued herein
27 as DOES 1 through 25 inclusive and, therefore, sue these Defendants by such fictitious names.
28 Plaintiffs will amend their Complaint to allege their true names and capacities when ascertained.

CONSUMER LITIGATION LAW CENTER, APC

3

**VERIFIED COMPLAINT**

CONSUMER LITIGATION LAW CENTER, APC

1  Plaintiffs believe and thereon allege that each of the fictitiously named Defendants are

2  responsible in some manner for the injuries to Plaintiffs alleged herein and that such injuries

3  were proximately caused by such Defendants.

4  ### III.

5  ### JURISDICTION AND VENUE

6  10. This Court has personal jurisdiction over this matter pursuant to the California

7  Constitution, Article XI, Section 10 and California *Code of Civil Procedure* section 410.10

8  because Defendants transacted business in this District and committed the acts complained of

9  herein in California.

10  11. Venue is proper in this District pursuant to California *Code of Civil Procedure*

11  section 395.5 because Defendants entered into the underlying contract with Plaintiffs in the

12  above-referenced jurisdiction and the payment obligations are to be performed in the above-

13  referenced District.

14  ### IV.

15  ### TENDER

16  12. Tender of the full outstanding debt is not required. There is no bright-line rule

17  requiring tender of the unpaid debt to set aside a sale. *Storm v. America's Servicing Company*

18  (S.D.Cal. Nov. 6, 2009, No. 09CV1206-IEG (JMA)) 2009 WL 3756629 at *6 fn. 9. ". . .

19  [T]ender is a "matter of discretion left up to the Court." *Id.* at *6. Even if tender were expressly

20  required anywhere, there is no requirement that tender be pled because "at the procedural stage

21  the Court only decides whether the plaintiff has pleaded "enough facts to state a claim to relief

22  that is plausible on its face." *Id.* (quoting *Bell Atl. Corp. v. Twombly* (2007) 550 U.S. 544, 547.)

23  Further, requiring Plaintiffs to allege tender would affirm the underlying debt and invalidate

24  Plaintiffs' claims. See *Onofrio v. Rice* (1997) 55 Cal. App. 4th 413, 424. Plaintiffs' claims for

25  fraud and unfair and deceptive acts challenge the underlying debt. In addition, the general

26  equitable exception to the tender rule should be applied as such a requirement would evidence

27  injustice and a hardship. *Humboldt Sav. Bank v. McCleverty* (1911) 161 Cal. 285, 291

28

**VERIFIED COMPLAINT**

13. As explained further below, Plaintiffs are alleging that the outstanding debt is the product of unfair and deceptive business practices with respect to foreclosure under the Loan Agreement, and is therefore disputing the debt and need not tender or allege tender at this stage of litigation

## V.

## FACTUAL ALLEGATIONS

14. On May 25, 2007, Plaintiffs executed an Interest Only Fixed Rate Note secured by a deed of trust to finance the purchase of the Subject Property that was then recorded on June 1, 2007 (collectively, the "Loan Agreement"). A true and correct copy of the Loan Agreement is attached hereto as Exhibit "A."

15. Plaintiffs performed all conditions required of them under the Loan Agreement except those conditions which Defendants prevented them from performing or which they were excused from performing due to Defendants' nonperformance.

16. In early 2012, due to unexpected financial hardship, Plaintiffs began contacting PHH to learn about any loss mitigation programs that might be available through PHH to help Plaintiffs avoid default. PHH's authorized agents advised Plaintiffs to apply for a loan modification with PHH.

17. Relying on PHH's agents' representations, Plaintiffs applied for a loan modification and submitted their loan modification application directly to PHH on PHH's invitation to do so, in or around April 2012.

18. On or around April 28, 2012, Plaintiffs received a letter from PHH requesting additional documents in order to proceed with the loan modification review.

19. As instructed, Plaintiffs submitted the requested documents to PHH by June 18, 2012, and thereafter, PHH proceeded to review Plaintiffs' file for a loan modification. However, by July 25, 2012, Plaintiffs received a letter from PHH advising them that their application for a loan modification was denied because their income was insufficient to cover a modified payment as well as their other monthly obligations.

///

CONSUMER LITIGATION LAW CENTER, APC

5

VERIFIED COMPLAINT

CONSUMER LITIGATION LAW CENTER, APC

20.     Plaintiffs proceeded with submitting a new request for a loan modification review on or around August 6, 2012. After receiving additional documents over the next few months, as requested by PHH, Plaintiffs were denied a loan modification as the financials submitted did not reflect that Plaintiffs were at risk of imminent default. In addition, at the time of the review, Plaintiffs' loan was current and PHH determined that the financials reflected an income sufficient to cover Plaintiffs' monthly expenses.

21.     However, when Plaintiffs reviewed the reason for the denial, they noticed that the review was conducted excluding almost $760 in expenses for taxes and insurance paid by Plaintiffs, and therefore, demanded a re-evaluation by PHH.

22.     Thereafter, on or around October 1, 2013, Defendants, through their trustee co-Defendant Aztec Foreclosure, caused a Notice of Default and Election to Sell Under Deed of Trust ("NOD") to be executed and recorded on the Subject Property. A true and correct copy of the NOD is attached hereto as Exhibit "D."

23.     Defendants then directed Aztec Foreclosure to record a Notice of Trustee's Sale ("NTS") against the Subject Property on January 2, 2014 (Exhibit "C").

24.     At that point, Plaintiffs were left in a state of helplessness and depression. After numerous attempts to obtain loss mitigation assistance from PHH, Plaintiffs felt that they had no choice but to file for Chapter 13 Bankruptcy, in January 2014, in order to request a repayment plan through the Bk Court and allow them to bring the loan current. However, the BK Trustee ordered a Chapter 13 repayment plan with a monthly payment that was unaffordable for Plaintiffs, and they had no choice but to dismiss their Chapter 13 Bankruptcy case.

25.     By October 2014, Plaintiffs continued to struggle with their finances, so Plaintiffs retained a third party, Homeowner Rights Law Group ("HRLG") to assist them in applying for a loan modification.

26.     On October 22, 2014, Plaintiffs submitted, through HLRG, a complete first lien loan modification application to PHH and received facsimile confirmation that the documents were transmitted successfully.

**VERIFIED COMPLAINT**

CONSUMER LITIGATION LAW CENTER, APC

27. On October 23, 2014, HRLG's employee, Samantha Hainline, contacted PHH and spoke with Shayedira in Loss Mitigation, who advised Ms. Hainline that PHH received the loan modification submission the day before, and that PHH was reviewing the file and would let HRLG know if there was anything further being requested.

28. On November 10, 2014, Ms. Hainline followed up with PHH and spoke with Vakia in Loss Mitigation, who advised that additional documentation was needed in order to proceed with the loan modification review.

29. As instructed, Ms. Hainline obtained these documents from Plaintiffs and immediately thereafter, submitted them directly to PHH on November 17, 2014. Specifically, Ms. Hainline submitted bank statements, the borrowers' financial sheet, monthly expenses sheet, uniform borrower assistance form, and the 4506T form.

30. On December 2, 2014, Ms. Hainline obtained additional documents from Plaintiffs and immediately thereafter, submitted them directly to PHH. Specifically, Ms. Hainline submitted more bank statements for all accounts, pay-stubs for the co-borrower, and the profit and loss for Mr. Khan.

31. On December 4, 2014, Danny Arana from HRLG called PHH and spoke with Jane in the legal department, who advised that the file was coded for litigation because the borrowers were represented by a law firm, but she would escalate the file to get staged for modification review, pending completeness of the file.

32. On December 5, 2014, Ms. Hainline followed up with PHH and spoke with Shikisha in Loss Mitigation, who advised that additional documentation had been requested, and specifically, additional bank statements for the months of October and November.

33. As instructed, on December 5, 2014, Ms. Hainline submitted the requested documents directly to PHH via facsimile.

34. On December 8, 2014, Mr. Arana contacted PHH and spoke with Celeste in Loss Mitigation, who advised that she had just been assigned to Plaintiffs' file and she had not reviewed the file yet. She further advised that PHH's system was having technical issues so she could not research the information that was just submitted.

**VERIFIED COMPLAINT**

CONSUMER LITIGATION LAW CENTER, APC

35.     On December 9, 2014 Ms. Hainline called PHH and spoke with Michael in the Relationship Management Department. Michael advised that he was not familiar with Plaintiffs' file and that he would call Ms. Hainline back with more information that same day. Michael never returned Ms. Hainline's phone call.

36.     On December 10, 2014, Ms. Hainline contacted PHH and spoke with Shayearia in the Default Legal Department, who advised that the Foreclosure Attorney was working on postponing the sale and that PHH did, in fact, have the paperwork for the loan modification and the additional documentation that was submitted.

37.     On December 10, 2014, Mr. Arana contacted PHH and spoke with Regina in Loss Mitigation, who advised that an email was sent to request the postponement of the foreclosure sale date.

38.     Mr. Arana then called PHH again and spoke with Jane in the Legal Department, who advised that she sent an email request to postpone the sale date and she deemed the file complete as of that moment and therefore, would escalate the request to postpone the foreclosure sale.

39.     On December 17, 2014, Ms. Hainline contacted PHH and spoke with Taylor in the bankruptcy department, who advised that the file was missing documents, and specifically the 2014 profit and loss, current pay-stubs for Mrs. Khan, financial expenses, signed 1040, and an explanation of the large transfer from personal bank account to Tower Energy Group.

40.     On December 18, 2014, Ms. Hainline submitted the required documentation directly to PHH via facsimile, except the explanation letter and 2012 taxes.

41.     On December 19, 2014, Ms. Reulas contacted PHH and spoke with Mark in Loss Mitigation, who confirmed receipt of the documents sent the previous day, and advised that the single point of contact assigned to Plaintiffs' file was Celeste Doyle. Mark further advised that Ms. Doyle would be reviewing the file and if it was complete, it would be forwarded to the investor for review.

42.     On December 22, 2014, Ms. Hainline submitted the remainder of the requested documentation directly to PHH, including the explanation letter and 2012 taxes.

**VERIFIED COMPLAINT**

CONSUMER LITIGATION LAW CENTER, APC

43.     Over the next four (4) to five (5) weeks, Plaintiffs did not hear from PHH and whenever Plaintiffs contacted PHH they were unable to speak to a live representative to obtain a current status of the loan modification review.

44.     Finally, on January 28, 2015, when Ms. Hainline contacted PHH she was able to speak with Mike in the Loss Mitigation Department, who advised that Plaintiffs' file was denied for a loan modification because Plaintiffs could not afford the payment. Mike stated that the decision was made on January 15, 2015, but that Plaintiffs could apply again if they could show additional income. Plaintiffs had not received this denial in writing, so Ms. Hainline requested a copy of the denial letter, and Mike advised that he would fax it to Ms. Hainline immediately.

45.     The denial letter, dated January 15, 2015, did not state Plaintiffs were denied for unaffordability as Ms. Hainline was verbally advised, but instead stated that Plaintiffs' were denied because they failed to submit all the conditions for the loan modification review.

46.     On February 2, 2015, Ms. Hainline again contacted PHH and spoke with Hugo Perez in Loss Mitigation to obtain an explanation as to why the denial letter stated a different reason for denial than the reason Mike provided on January 28, 2015 over the phone. Mr. Perez would not provide any information regarding the contradicting information from PHH. Ms. Hainline then asked to speak with Mr. Perez's supervisor, Crystal Jenkins, who was out of the office, or Kim Tracey, who was also unavailable. Ms. Hainline left a voicemail for both Ms. Jenkins and Ms. Tracey.

47.     Later that day, Mr. Arana contacted PHH and spoke with Renekea Summerville in Loss Mitigation, who advised that the account was "coded" and that she could not assist with the file. Mr. Arana immediately demanded that the call be escalated.

48.     Mr. Arana was then connected to the Escalation Department, and was advised that the account is coded for litigation because Plaintiffs were represented by HRLG and therefore, customer service and loss mitigation could not speak with him.

/ / /

/ / /

/ / /

9

**VERIFIED COMPLAINT**

49.     Mr. Arana called his previous contact at PHH, Jane, who advised that Cynthia Jones would be reaching out to Plaintiffs shortly. When Mr. Arana asked Jane why the reason for Plaintiffs' denial was contradictory to what was said over the phone, Jane advised she would try and escalate a phone call back to him.

50.     On February 3, 2015, Cynthia Jones contacted Mr. Arana and advised that Plaintiffs reported they had additional income on the financial worksheet and that PHH needed proof of the additional income. Other than that, everything was complete, however, that is the reason the file was closed out on January 14, 2015. Mr. Arana advised Ms. Jones that this information had been provided in December 2014, which Ms. Jones then advised was not clearly identified.

51.     After this phone call, Ms. Hainline submitted the previously requested documentation that was submitted to PHH on December 22, 2014, just so that PHH would re-open the loan modification review.

52.     Cher Holmes, supervisor of HRLG, followed up with PHH and spoke with Ms. Jones. Ms. Jones explained that although she had everything she needed for the file, the financial worksheet showed an income of $4,688 but it did not specify where the income came from. Ms. Holmes explained that the Request for Modification form ("RMA") clearly stated that the income was from self-employment. Ms. Jones advised that PHH does not use the RMA and that she follows PHH's process, and therefore, the file was closed out since it was missing information. Ms. Holmes inquired as to how Plaintiffs could appeal the decision and Ms. Jones responded that there is no appeal process due to the fact that the file was not denied, it was closed out.[2] She further advised that an entire package with the financial worksheet identifying other income with self-employment needed to be re-submitted to PHH, and the assigned single point of contact, Celeste Doyle, would re-review the file.

---

[2] This information was directly contrary to the January 15, 2014 denial letter Plaintiffs received.

**VERIFIED COMPLAINT**

CONSUMER LITIGATION LAW CENTER, APC

CONSUMER LITIGATION LAW CENTER, APC

53.     On February 6, 2015, as instructed, Ms. Hainline submitted the entire package over again with all required information to PHH via facsimile, made to the attention of Celeste Doyle.

54.     On February 13, 2015, Plaintiffs followed up with PHH and spoke with PHH's representative, Hugo Perez, who advised that a few additional documents were needed to complete the application, including one (1) additional pay-stub, an updated profit and loss, signed and dated hardship letter, and the last two (2) months bank statements.

55.     On February 23, 2015, Plaintiffs submitted the requested documentation except for the signed and dated hardship letter and the updated profit and loss, directly to PHH via facsimile.

56.     On March 2, 2015, Plaintiffs submitted the remaining documents that were requested by PHH, specifically, the hardship affidavit and the updated profit and loss, directly to PHH via facsimile.

57.     Regardless of these facts and despite the fact that Plaintiffs' loan modification application was complete and in review with PHH, PHH and Citibank Trust 2007-9, through trustee Aztec Foreclosure, scheduled a foreclosure sale date for March 26, 2015.

58.     To this date, Plaintiffs have not received written acknowledgement as to the submitted package, and have not received a written determination as to the loan modification request sent on February 6, 2015, at the request of PHH.

59.     To this date, Plaintiffs have been unable to receive any foreclosure avoidance assistance from PHH after several requests, and Defendants have refused to help Plaintiffs but instead, they have chosen to aggressively proceed with foreclosure.

60.     Plaintiffs are informed, believe, and thereon allege that Defendants intentionally and wrongfully delayed Plaintiffs' numerous requests for a loan modification due to Defendants' ineffective and unreasonably slow processing systems, as motivation towards the financial incentives Defendants receive by asking Plaintiffs to submit multiple applications and documents in connection therewith, and based upon Defendants' failure to properly train their representatives in compliance with the servicing standards imposed by California law.

**VERIFIED COMPLAINT**

# FIRST CAUSE OF ACTION

## WRONGFUL FORECLOSURE

### (Cal. *Civ. Code* § 2923.6)

### (Against All Defendants)

61.     Plaintiffs hereby reallege and incorporate by reference all preceding paragraphs as though fully set forth herein.

62.     Under the portion of the Homeowner Bill of Rights ("HBOR") codified at *Civil Code* §2923.6(g), the mortgage servicer must evaluate applications from borrowers who have not already been evaluated or afforded a fair opportunity to be evaluated for a first lien loan modification prior to January 1, 2013, or who have not been evaluated or afforded a fair opportunity to be evaluated consistent with the requirements of this section. Cal. *Civ. Code* § 2923.6(g).

63.     As set forth herein, Plaintiffs have not been fairly evaluated for a foreclosure prevention alternative, including a loan modification, nor have they been afforded a fair opportunity to be evaluated, despite their numerous requests for mortgage assistance between 2012 and present day.

64.     Accordingly, pursuant to *Civil Code* §2923.6(g), Defendants are obligated to evaluate Plaintiffs' loan for any and all available foreclosure prevention alternatives, including but not limited to a loan modification. However, Defendants fail to comply with their obligations.

65.     On or around February 2, 2015, Plaintiffs were informed that their loan modification request had been denied because their application was missing required information that PHH previously requested, therefore, their file was closed out. This decision was in fact, erroneous, as Plaintiffs submitted all the requested information to PHH by December 22, 2014.

66.     As a result, Plaintiffs were forced to start over again and resubmit for another loan modification review.

/ / /

**VERIFIED COMPLAINT**

CONSUMER LITIGATION LAW CENTER, APC

67.     As instructed, on or about February 6, 2015, Plaintiffs submitted a complete first lien loan modification application to PHH on PHH's instructions to do so. PHH has not acknowledged receipt of the submission, and has not provided Plaintiffs with any updates as to the status of the loan modification review.

68.     As of the date of this Complaint, Plaintiffs have been unable to receive any foreclosure avoidance assistance from Defendants after several requests, and despite the fact that Plaintiffs' first lien loan modification application is complete and has been submitted to PHH several times, Defendants still fail to fairly evaluate Plaintiffs' first lien loan modification application and continue with the foreclosure of the Subject Property. A sale date is currently scheduled for March 26, 2015.

69.     Under *Civil Code* section 2924.12(a)(1), "[i]f a trustee's deed upon sale has not been recorded, a borrower may bring an action for injunctive relief to enjoin a material violation of Section . . . 2923.6 . ."

70.     Plaintiffs are therefore entitled to injunctive relief preventing Defendants from proceeding with foreclosure on the Subject Property, to recover their attorneys' fees and costs incurred in preventing Defendants from exercising the power of sale, and such further relief as set forth in the section captioned Prayer for Relief which is by this reference incorporated herein in an amount no less than the jurisdictional minimum of this Court.

71.     Plaintiffs are also entitled to either the greater of their actual damages or $50,000.00 under *Civil Code* section 2924.12(b) should Defendants sell the Subject Property at a trustee's sale and thereafter record a trustee's deed upon sale.

## SECOND CAUSE OF ACTION

## FAILURE TO ENGAGE IN LOSS MITIGATION

### (Cal. *Civ. Code* § 2923.55)

### (Against All Defendants)

72.     Plaintiffs hereby reallege and incorporate by reference all preceding paragraphs as though fully set forth herein.

///

CONSUMER LITIGATION LAW CENTER, APC

13

73.     A mortgage servicer, mortgagee, beneficiary, or authorized agent may not record a notice of default until thirty days after contacting the borrower to discuss loss mitigation options, including advising the borrower of her right to request a subsequent meeting, conducting the subsequent meeting within fourteen days of the request, and providing the borrower with a toll-free number to contact a United States Department of Housing and Urban Development ("HUD") certified counseling agency. Cal. *Civ. Code* § 2924.55(b)(2).

74.     If unable to contact the borrower to discuss the loss mitigation options mentioned above, alternatively, the loan servicer must satisfy various due diligence requirements by providing contact information for a HUD-certified counseling agency, following up by phone three (3) times at different hours and on different days, and following up two weeks later with a certified letter, return receipt requested that also contains the contact information for a HUD-certified counseling agency.  Cal. *Civ. Code* § 2923.55(f)(1)–(3).  The servicer must also provide a means for the borrower to contact a live representative of the servicer by phone, must post a link on its website with options to avoid foreclosure, must provide a toll-free phone number on its website that the borrower can call to discuss options to avoid foreclosure, and provide a phone number for a HUD-certified housing counseling agency on its website.  Cal. *Civ. Code* § 2923.55(f)(4)–(5).

75.     In addition, the servicer may only conduct a trustee's sale after providing the borrower with a statement that the borrower may request counseling at particular agencies if the borrower is a service member or dependent thereof, and after providing the borrower a statement that the borrower may request certain documents related to the borrower's note, deed of trust, and payment history. Cal. *Civ. Code* § 2924.55(b)(1).

76.     Plaintiffs are informed, believe, and thereon allege that the Notice of Default recorded on October 1, 2013 contains a false California Declaration of Compliance, wherein the mortgage servicer, PHH, falsely declares under penalty of perjury that PHH exercised due diligence to contact Plaintiffs to assess their financial situation and explore option to avoid foreclosure as required by California *Civil Code* §2923.55(f). This declaration is, however, false, as PHH failed to comply with the requirements of *Civil Code* §2923.55.

CONSUMER LITIGATION LAW CENTER, APC

14

**VERIFIED COMPLAINT**

77.     Plaintiffs are informed, believe, and thereon allege that they never received a written statement regarding counseling and options to avoid foreclosure for service members or their dependents from PHH.

78.     Plaintiffs are informed, believe, and thereon allege that they never received a written statement that they could request documents related to their loan, deed of trust, and payment history from PHH.

79.     Plaintiffs are informed, believe, and thereon allege that PHH never contacted them by phone to discuss options to avoid foreclosure and never informed them of their right to request any subsequent meeting.

80.     Plaintiffs are informed, believe, and thereon allege that they never received from PHH a letter with a phone number to contact a HUD-certified counseling agency.

81.     Plaintiffs are informed, believe, and thereon allege that they never received any follow up phone call from PHH—let alone on three (3) different days.

82.     Plaintiffs are informed, believe, and thereon allege that they never received a letter via certified mail, return receipt requested, with a phone number to find a HUD-certified counseling agency.

83.     Plaintiffs are therefore entitled to injunctive relief preventing Defendants from proceeding with foreclosure on the Subject Property, to recover their attorneys' fees and costs incurred in preventing Defendants from exercising the power of sale, and such further relief as set forth in the section captioned Prayer for Relief which is by this reference incorporated herein in an amount no less than the jurisdictional minimum of this Court.

84.     Plaintiffs are also entitled to either the greater of their actual damages or $50,000.00 under *Civil Code* section 2924.12(b) should Defendants sell the Subject Property at a trustee's sale and thereafter record a trustee's deed upon sale.

/ / /

/ / /

/ / /

/ / /

CONSUMER LITIGATION LAW CENTER, APC

**VERIFIED COMPLAINT**

### THIRD CAUSE OF ACTION

### FAILURE TO ENGAGE IN LOSS MITIGATION

#### (Cal. *Civ. Code* § 2924.9)

#### (Against All Defendants)

85.    Plaintiffs hereby reallege and incorporate by reference all preceding paragraphs as though fully set forth herein.

86.    Under *Civil Code* §2924.9, the mortgage servicer is required to send a written communication to the borrower which provides specific information regarding the borrower's eligibility for a foreclosure prevention alternative and the process in which to apply for such alternative within five (5) business days of recording a Notice of Default.

87.    In this case, the NOD was recorded on October 1, 2013, and Plaintiffs allege that Defendants failed to send them, within five (5) business days thereof, written information regarding the foreclosure prevention alternative(s) for which Plaintiffs could obtain an evaluation, the application, if any, that Plaintiffs must submit in order to be considered, and the means and process by which Plaintiffs could obtain an application.

88.    Plaintiffs have sought, and continue to seek, information on and consideration for, all available alternatives to foreclosure offered by Defendants.

89.    Plaintiffs are therefore entitled to injunctive relief preventing Defendants from proceeding with foreclosure on the Subject Property, to recover their attorneys' fees and costs incurred in preventing Defendants from exercising the power of sale, and such further relief as set forth in the section captioned Prayer for Relief which is by this reference incorporated herein in an amount no less than the jurisdictional minimum of this Court.

90.    Plaintiffs are also entitled to either the greater of their actual damages or $50,000.00 under *Civil Code* section 2924.12(b) should Defendants sell the Subject Property at a trustee's sale and thereafter record a trustee's deed upon sale.

///

///

///

**VERIFIED COMPLAINT**

CONSUMER LITIGATION LAW CENTER, APC

### FOURTH CAUSE OF ACTION

### FAILURE TO ENGAGE IN LOSS MITIGATION

### (Cal. *Civ. Code* § 2924.10)

### (Against All Defendants)

91.     Plaintiffs hereby reallege and incorporate by reference all preceding paragraphs as though fully set forth herein.

92.     Under *Civil Code* §2924.10(a), after a borrower submits a complete first lien loan modification application, the "mortgage servicer shall provide written acknowledgment of the receipt of the documentation within five business days of receipt.   In its initial acknowledgment of receipt of the loan modification application, the mortgage servicer shall include the following information: (1) A description of the loan modification process, including an estimate of when a decision on the loan modification will be made after a complete application has been submitted by the borrower and a length of time the borrower will have to consider an offer of a loan modification or other foreclosure prevention alternative.  (2) Any deadlines, including deadlines to submit missing documentation, that would affect the processing of a first lien loan modification application.  (3) Any expiration dates for submitted documents. (4) Any deficiency in the borrower's first lien loan modification application." Cal. *Civ. Code* § 2924.10(a)(1)–(4).

93.     Here, Plaintiffs submitted a first lien loan modification application on October 22, 2014, and again on February 6, 2015.

94.     To date, Plaintiffs have not received—let alone within five (5) business days of their submission—any letter acknowledging receipt of the complete first lien loan modification application submitted on October 22, 2014.

95.     To date, Plaintiffs have not received—let alone within five (5) business days of their submission—any letter acknowledging receipt of the complete first lien loan modification application submitted on February 6, 2015.

/ / /

/ / /

CONSUMER LITIGATION LAW CENTER, APC

**VERIFIED COMPLAINT**

CONSUMER LITIGATION LAW CENTER, APC

96.     In failing to provide Plaintiffs with said acknowledgment letter, Plaintiffs were deprived of information that would have apprised them of whether their loan modification applications contained any deficiency, any expiration dates for documents, any deadlines to submit documents, and a description of the loan modification process, including applicable deadlines.

97.     Plaintiffs are therefore entitled to injunctive relief preventing Defendants from proceeding with foreclosure on the Subject Property, to recover their attorneys' fees and costs incurred in preventing Defendants from exercising the power of sale, and such further relief as set forth in the section captioned Prayer for Relief which is by this reference incorporated herein in an amount no less than the jurisdictional minimum of this Court.

98.     Plaintiffs are also entitled to either the greater of their actual damages or $50,000.00 under *Civil Code* section 2924.12(b) should Defendants sell the Subject Property at a trustee's sale and thereafter record a trustee's deed upon sale.

## FIFTH CAUSE OF ACTION

### FAILURE TO ASSIGN A SINGLE POINT OF CONTACT

### (Cal. *Civ. Code* § 2923.7)

### (Against All Defendants)

99.     Plaintiffs hereby reallege and incorporate by reference all preceding paragraphs as though fully set forth herein.

100.    When a servicer assigns a single point of contact ("SPOC") to a borrower who requests a foreclosure prevention alternative, the SPOC must communicate available foreclosure prevention alternatives to the borrower, must coordinate receipt of documents in furtherance of the foreclosure prevention alternative and notify the borrower of missing documents, have access to sufficient information to give the borrower timely and accurate updates about the status of the borrower's foreclosure prevention alternative, **have access to individuals who can postpone or stop foreclosure proceedings**, and ensure that the borrower is reviewed for every available foreclosure prevention option. Cal. *Civ. Code* § 2923.7(b).

///

**VERIFIED COMPLAINT**

101.   The SPOC must also remain assigned to the borrower until all loss mitigation options are exhausted, and must transfer the borrower to a supervisor when requested. Cal. *Civ. Code* § 2923.7(c)–(d).

102.   Plaintiffs were never provided with an adequate SPOC to review options to avoid foreclosure but rather were repeatedly re-assigned to new representatives, none of whom returned Plaintiffs' calls or written correspondence.

103.   PHH's purported SPOCs failed to satisfy the minimal obligations required of them under *Civil Code* section 2923.7. Beginning in April 2012 and up to this date, each time Plaintiffs themselves or through their agents contacted PHH and asked to speak to the SPOC, Plaintiffs were told the SPOC was not available and they were transferred to someone else who could not or would not provide Plaintiffs with any information regarding their account.

104.   The SPOCs obviously did not have authority to properly coordinate receipt of documents because even though Plaintiffs submitted the requested documentation for the loan modification review, PHH's representatives continued to request the same documents over and over again, ultimately wrongfully denying Plaintiffs' request due to missing documentation.

105.   The SPOCs never initiated communication with Plaintiffs to request additional documents and Plaintiffs would never have known additional documents were required unless Plaintiffs or their authorized agents contacted PHH to inquire as to the status of the loan modification submission.

106.   Plaintiffs are informed, believe, and thereon allege that PHH failed to assign a SPOC satisfying the requirements of *Civil Code* section 2923.7 because the SPOCs were unable to provide consistent and accurate information regarding the status of Plaintiffs' loan and Plaintiffs were unable to speak with anyone else at PHH with the current and updated status of the loan modification review.

107.   Had PHH assigned Plaintiffs an adequate SPOC, Defendants would not have scheduled a foreclosure sale date for March 26, 2015 because a SPOC with sufficient information regarding the status of the loan modification application and with access to individuals with the ability to and authority to provide accurate information would have easily

**VERIFIED COMPLAINT**

CONSUMER LITIGATION LAW CENTER, APC

1    determined that Plaintiffs were in active loan modification review with a complete application,

2    would have provided an earlier update that more documents were needed, and would have been

3    able to avoid scheduling the trustee's sale because Plaintiffs' loan modification review was

4    pending.

5    108.    Plaintiffs are therefore entitled to injunctive relief preventing Defendants from

6    proceeding with foreclosure on the Subject Property, to recover their attorneys' fees and costs

7    incurred in preventing Defendants from exercising the power of sale, and such further relief as

8    set forth in the section captioned Prayer for Relief which is by this reference incorporated herein

9    in an amount no less than the jurisdictional minimum of this Court.

10   109.    Plaintiffs are also entitled to either the greater of their actual damages or

11   $50,000.00 under *Civil Code* section 2924.12(b) should Defendants sell the Subject Property at

12   a trustee's sale and thereafter record a trustee's deed upon sale.

### SIXTH CAUSE OF ACTION

### WRONGFUL FORECLOSURE

#### (Cal. *Civ. Code* § 2924(a)(6))

#### (Against All Defendants)

17   110.    Plaintiffs hereby reallege and incorporate by reference all preceding paragraphs

18   as though fully set forth herein.

19   111.    Plaintiffs are informed, believe, and thereon allege that Defendants do not have

20   standing to conduct a non-judicial foreclosure sale of the Subject Property because they are not

21   the holder of the beneficial interest under the Loan Agreement and/or Deed of Trust, the

22   original trustee or the substituted trustee under the Deed of Trust, or the designated agent of the

23   holder of the beneficial interest. Cal. *Civil Code* §2924(a)(6).

24   112.    The 2007 Deed of Trust identifies the original Lender Banco Popular, N.A., the

25   Beneficiary as Mortgage Electronic Registration Systems, Inc. ("MERS"), and the Trustee as

26   First American Title (Exhibit "A").

27   / / /

28   / / /

CONSUMER LITIGATION LAW CENTER, APC

20

**VERIFIED COMPLAINT**

113. On September 17, 2013, a Corporate Assignment of Deed of Trust ("Assignment") was executed and recorded whereby, MERS, as nominal beneficiary under the Deed of Trust, purportedly assigned all beneficial interest under the Deed of Trust to Citibank, N.A., as Trustee for GSAA Home Equity Trust 2007-9 (Exhibit "B").

114. Through this Assignment, MERS claimed to have conveyed Plaintiffs' Note and Deed of Trust ("Loan Agreement") to Citibank Trust 2007-9 in September 2013. However, Plaintiffs allege, on information and belief, that this conveyance never occurred.

115. Plaintiffs are further informed, believe, and thereon allege that Citibank Trust 2007-9 never held any interest in the Loan Agreement because, as a matter of law, Citibank Trust 2007-9 was not able to receive any assets, including Plaintiffs' Loan, in September 2013. Citibank Trust 2007-9 had a Closing Date of September 28, 2007. In this case, the Loan Agreement was not duly endorsed, assigned, transferred, and delivered to Citibank Trust 2007-9 prior to the Closing Date of September 28, 2007. Thus, Citibank Trust 2007-9 had already been closed for over eight (8) years by the time Defendants attempted to assign the beneficial interest in the Loan Agreement to Citibank Trust 2007-9.

116. Plaintiffs are informed and believe and thereon allege that the Assignment was therefore ineffective as Citibank Trust 2007-9 could not have accepted the Loan Agreement after the Closing Date pursuant to both the Pooling and Servicing Agreement and the requirements for a Real Estate Mortgage Investment Conduit ("REMIC") Trust, thereby rendering the foreclosure sale of the Subject Property, as well as the NOD and NTS *void ab initio*.

117. Finally, only the proper beneficiary of a Deed of Trust is authorized to substitute a new trustee for the existing trustee. Defendant Citibank Trust 2007-9's attempt to substitute in Defendant Aztec Foreclosure as Trustee instead of the original Trustee failed because Citibank Trust 2007-9 was not the properly designated Beneficiary of the Loan Agreement and Deed of Trust. Cal. *Civil Code* §2934a. This information can be found on page S-11 of the Citibank Trust 2007-9's Prospectus, located at *http://www.secinfo.com/drjtj.u665.htm*.

CONSUMER LITIGATION LAW CENTER, APC

21

**VERIFIED COMPLAINT**

CONSUMER LITIGATION LAW CENTER, APC

118. Ultimately, because the Assignment was ineffective and void, the purported Beneficiary of the Loan Agreement, Citibank Trust 2007-9, had no authority or standing to order Defendants' purported trustee Aztec Foreclosure to issue the NOD, the NTS, or to proceed with conducting the trustee's sale set for March 26, 2015.

119. Plaintiffs are informed, believe, and thereon allege that Defendants, and each of them, acted with the intent to defraud Plaintiffs and the public regarding the status of the Loan Agreement. Defendants, and each of them, also knew that recording the Assignment without the authorization to do so would cause Plaintiffs to rely upon Defendants' actions by attempting to negotiate a loan modification with PHH.

120. Plaintiffs are further informed, believe, and thereon allege that because the attempt to assign the Loan Agreement was made after the Closing Date, these Defendants have committed fraud not only upon Plaintiffs, but other financially interested parties as well.

121. Defendants intentionally misled Plaintiffs and failed to disclose material facts to Plaintiffs regarding the status of the Loan Agreement, including the fact that Defendants maintain the non-judicial foreclosure process without any right under the law by assigning the Loan Agreement after the Closing Date.

122. Under the totality of the circumstances, Defendants' actions were willful, wanton, intentional, and with reckless disregard for Plaintiffs' rights, justifying an award of not only actual and compensatory damages, but also exemplary and punitive damages to serve as a deterrent not only as to future conduct of the named Defendants herein, but also to other parties or entities with similar inclinations.

123. Plaintiffs are therefore entitled to injunctive relief preventing Defendants from proceeding with foreclosure on the Subject Property until this action is resolved, to recover their attorneys' fees and costs incurred in preventing Defendants from exercising the power of sale, and such further relief as set forth in the section captioned Prayer for Relief which is by this reference incorporated herein in an amount no less than the jurisdictional minimum of this Court.

///

**VERIFIED COMPLAINT**

CONSUMER LITIGATION LAW CENTER, APC

### SEVENTH CAUSE OF ACTION

### VIOLATION OF CAL. *BUS. & PROF. CODE* §§ 17200, et. seq.

### IN LOAN SERVICING

### (Against All Defendants)

124.   Plaintiffs hereby reallege and incorporate by reference all preceding paragraphs as though fully set forth herein.

125.   California *Business & Professions Code* section 17200, California's Unfair Competition Law ("UCL"), prohibits "any **unlawful**, **unfair** or **fraudulent** business act or practice." Cal. *Bus. & Prof. Code* § 17200 (emphasis added). The code section is written in the disjunctive, and thus requires that only one prong is satisfied in order to find liability. *Cel-Tech Comm., Inc. v. Los Angeles Cellular Tel. Co.* (1999) 20 Cal.4th 163, 180.

126.   **Unlawful:** "The 'unlawful' practices prohibited by section 17200 are **any** practices forbidden by law, be it civil or criminal, federal, state, or municipal, statutory, regulatory, or **court-made**." *Saunders v. Superior Court* (1994) 27 Cal.App.4th 832, 838–39 (emphasis added). These predicate unlawful business acts and practices include, but are not limited to, California *Civil Code* section 1709 (fraud in servicing), *Civil Code* section 1710 (negligent misrepresentation), *Civil Code* section 2923.55 (failure to engage in loss mitigation), *Civil Code* section 2923.6 (wrongful foreclosure), *Civil Code* section 2923.7 (failure to assign an adequate SPOC), *Civil Code* section 2924.9 (failure to engage in loss mitigation), *Civil Code* section 2924.10 (failure to engage in loss mitigation), and *Civil Code* section 1714(a) (negligence). A violation of any of these underlying laws is a *per se* violation of section 17200.

127.   Plaintiffs are informed, believe, and thereon allege that Defendants, and each of them, violated *Civil Code* section 2923.55 by failing to initiate contact with Plaintiffs to discuss loss mitigation options to avoid foreclosure at least thirty (30) days before filing the NOD and by failing to comply with the extensive notice and loss mitigation requirements of *Civil Code* section 2923.55 before recording the NOD on the Subject Property.

///

///

**VERIFIED COMPLAINT**

128. Plaintiffs are informed, believe, and thereon allege that Defendants, and each of them, violated *Civil Code* section 2923.6 by repeatedly failing to fairly review Plaintiffs or afford Plaintiffs a fair opportunity to be evaluated for all foreclosure prevention alternatives, but instead proceeding with foreclosure.

129. Plaintiffs are informed, believe, and thereon allege that Defendants, and each of them, violated *Civil Code* section 2924.9 by failing to send Plaintiffs written communication which provides specific information regarding their eligibility for a foreclosure prevention alternative and the process in which to apply for such alternative within five (5) business days of recording a Notice of Default.

130. Plaintiffs are informed, believe, and thereon allege that Defendants, and each of them, violated *Civil Code* section 2924.10 by failing to provide a written acknowledgement of Plaintiffs' loan modification application that would communicate deadlines to submit documents, expiration dates for documents, and deficiencies with the documents that Plaintiffs submitted in furtherance of their loan modification application.

131. Plaintiffs are further informed, believe, and thereon allege that Defendants violated *Civil Code* section 1714(a) in that Defendants owed a duty of care to Plaintiffs as the lenders and servicers of the Loan Agreement, that Defendants' conduct fell below the standard of care that owed to Plaintiffs as alleged herein, that Defendants' conduct was the actual and proximate cause of the harm to Plaintiffs as alleged herein and that Plaintiffs suffered damages as alleged herein as a result of Defendants' negligent acts and omissions.

132. Finally, Defendants' acts and omissions in servicing the Loan Agreement violate California *Civil Code* section 1709 because Defendants wrongfully and willfully deceived Plaintiffs into changing position to their financial detriment, and *Civil Code* section 1711 because Defendants violated established California public policies to protect the public from deceitful conduct.

133. **Unfair:** "[A]n unfair business practice occurs when it offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to the consumer." *People v. Casa Blanca Convalescent Homes Inc.*

CONSUMER LITIGATION LAW CENTER, APC

(1984) 159 Cal.App.3d 509, 530.  Furthermore, the "unfair" standard is intentionally broad and allows courts maximum discretion to prohibit new schemes to defraud.  *Motors, Inc. v. Times Mirror Co.* (1980) 102 Cal.App.3d 735, 740.  Finally, because section 17200 is disjunctive, practices that may be lawful may nevertheless be unfair.  *Id.*

134.  Defendants, and each of them, engaged in unfair business practices by refusing to assist Plaintiffs to avoid foreclosure, failing to provide Plaintiffs with correct updates as to their loan modification status, repeatedly losing documents and requesting the same documents over and over from Plaintiffs, and by refusing to fairly review Plaintiffs' application for foreclosure prevention alternatives for which Plaintiffs qualified in every respect and was only prevented from receiving due to Defendants' wrongful conduct.

135.  As alleged hereinabove, when Defendants had an opportunity to engage in good faith loss mitigation, they did nothing to relieve Plaintiffs, they either did nothing to relieve Plaintiffs or engaged in bad faith purported "modification assistance" by allowing Plaintiffs to apply for a modification while actually proceeding towards foreclosure on the Subject Property.

136.  Defendants' purported "loan assistance" and "loss mitigation" perpetuated a pattern of deceptive and unfair business practices by failing and refusing to fairly review Plaintiffs for a loan modification pursuant to any and all internal loan modification programs for which Plaintiffs qualified and by failing to review Plaintiffs for a modification in good faith and as required under *Civil Code* section 2923.4, et seq.  Defendants' unfair practices include:

    a.    charging excessive or improper fees for default-related services;

    b.    providing false or misleading information in response to inquiries;

    c.    failing to perform proper loan modification underwriting;

    d.    failing to gather or losing loan modification application documentation and other paper work;

    e.    failing to provide adequate staffing to implement programs;

    f.    failing to adequately train staff responsible for loan modifications;

    g.    failing to establish adequate processes for loan modifications;

    h.    providing false or misleading information to Plaintiffs;

CONSUMER LITIGATION LAW CENTER, APC

**VERIFIED COMPLAINT**

i.   initiating foreclosure while Plaintiffs were in good faith actively pursuing a loss mitigation alternative offered by Defendants;

j.   miscalculating Plaintiffs' eligibility for loan modification programs;

k.   wrongfully denying Plaintiffs' modification application;

l.   misleading Plaintiffs by representing that their loan modification applications would be handled promptly yet failing to act in a timely manner; and

m.   wrongfully proceeding towards a foreclosure sale on the Subject Property.

137.   Instead of engaging in good faith loss mitigation assistance as required by law, Defendants have still maintained foreclosure proceedings on the Subject Property and wrongfully refused to postpone the trustee's sale.

138.   Plaintiffs are informed, believe, and thereon allege that Defendants failed to seek alternatives to foreclosure and continued with the foreclosure process as part of their company policies to deny contractual and stipulated benefits to borrowers such as Plaintiffs and instead foreclose and profit on the collateral value of the Subject Property. These policies were put into place despite the fact that Defendants are under a duty to offer modification and foreclosure prevention relief in good faith under California law.

139.   Defendants' unfair practices in servicing Plaintiffs' loan violate public policy favoring loan modification. This policy is evidenced by Cal. *Civil Code* section 2923.4, et seq. and numerous opinions and publications of the California Attorney General's Office.

140.   **Fraudulent**: A business practice is fraudulent under *Business and Professions Code* section 17200 if "members of the public are likely to be deceived." *Committee on Children's Television v. General Foods Corp.* (2002) 35 Cal.3d 197, 211. Furthermore, even lawful contract terms presented in a deceptive manner are fraudulent under section 17200. *Boschma v. Home Loan Ctr., Inc.* (2011) 198 Cal.App.4th 230, 253. Such fraudulent practices do not require the plaintiff show actual deception, reliance, or damages. *Committee on Children's Television v. General Foods Corp.*, *supra*, 35 Cal.3d at 211. Defendants' acts and omissions, as alleged herein, were likely to deceive members of the public and, in fact, did deceive Plaintiffs.

**VERIFIED COMPLAINT**

CONSUMER LITIGATION LAW CENTER, APC

141.  Defendants' fraudulent business practices included, but were not limited to:

a.  instituting improper and premature foreclosure proceedings to generate unwarranted fees;

b.  misrepresenting the foreclosure status to Plaintiffs and the general public regarding Plaintiffs' property;

c.  falsely claiming that Defendants could not have the trustee's sale date postponed;

d.  failing to review Plaintiffs for a loan modification in good faith so that Defendants could instead charge excessive interest, penalties and fees, and ultimately foreclose on the Subject Property, profiting thereby; and

e.  improperly denying Plaintiffs' loan modification applications.

142.  Defendants' unlawful, unfair, and fraudulent business practices present a continuing threat of deception to both Plaintiffs and members of the public at large as alleged herein.  Plaintiffs and other members of the general public have no other adequate remedy at law that will prevent Defendants' misconduct as alleged herein from occurring, and reoccurring, in the future to both Plaintiffs and members of the general public.

143.  As a direct and proximate result of Defendants' unlawful, unfair, and fraudulent business practices alleged herein, Plaintiffs have suffered extensive pecuniary damages as alleged herein as well as threatened loss of the Subject Property.

144.  As a result of Plaintiffs' reliance on Defendants' misrepresentations, Plaintiffs have suffered and continues to suffer pecuniary damages due to excessively high mortgage payments, fees, and costs, and loss of all value and equity in the Subject Property, in an amount to be proven at time of trial but no less than the jurisdictional minimum of this Court.

145.  Plaintiffs are also entitled to enjoin the trustee's sale on the Subject Property set for March 26, 2015, until this action is resolved.

146.  Plaintiffs are therefore entitled to such relief as is set forth in this Cause of Action and to such further relief set forth below in the section captioned Prayer for Relief which is by this reference incorporated herein.

*CONSUMER LITIGATION LAW CENTER, APC*

**VERIFIED COMPLAINT**

CONSUMER LITIGATION LAW CENTER, APC

# EIGHTH CAUSE OF ACTION

## NEGLIGENCE

### (Against All Defendants)

147.    Plaintiffs hereby reallege and incorporate by reference all preceding paragraphs as though fully set forth herein.

148.    Defendants, once undertaking to review PlaintiffS for a loan modification, were under a duty to exercise reasonable care in processing, reviewing, and handling the loan modification application, including by complying with *Civil Code* sections 2923.55, 2923.6, 2924.9, and 2924.10.

149.    Defendants breached their duties to Plaintiffs in that Defendants delayed Plaintiffs' loan modification review, repeatedly lost the documents that Plaintiffs submitted at Defendants' requests, gave Plaintiffs false and contradictory updates as to the status of their modification, and finally denied Plaintiffs for a loan modification without reviewing Plaintiffs for all possible foreclosure prevention alternatives for which they qualify.

150.    Defendants owed Plaintiffs a duty to evaluate their loan modification application for any and all available foreclosure prevention alternatives, including a loan modification.

151.    Plaintiffs would have taken additional loss mitigation steps sooner had Defendants not delayed in reviewing Plaintiffs for a loan modification while repeatedly assuring Plaintiffs that they were in active review.  Plaintiffs would not now be forced to incur extensive legal fees and costs in seeking to prevent Defendants from selling the Subject Property at a foreclosure sale, even though Defendants are under a legal obligation to postpone the sale but refuse to do so. Finally, Plaintiffs are informed, believe, and thereon allege that they would already have qualified for a loan modification had Defendants properly accounted for Plaintiffs' interest rate, income and expenses.

/ / /

/ / /

/ / /

/ / /

**VERIFIED COMPLAINT**

152. Defendants intended for Plaintiffs to rely on their representations that Plaintiffs were in loan modification review and could remain in review by submitting the requested documents because Defendants would not have made the representation in writing detailing the additional documentation needed unless Defendants intended for Plaintiffs to act in reliance on that representation.

153. Plaintiffs did rely on Defendants' representations because Plaintiffs continued with the loan modification process by submitting the requested documentation to PHH, thereby continuing with the loan modification review rather than take a different course of action to avoid losing the Subject Property.

154. As a result of Defendants' acts and omissions alleged herein, Plaintiffs have suffered and continues to suffer loss of equity, numerous fees and costs, and are facing loss of the Subject Property, including any equity they have built in the Subject Property.

155. Plaintiffs are therefore entitled to general and special damages in an amount to be proven at time of trial, but in any event no less than the jurisdictional minimum of this Court.

156. Plaintiffs are further entitled to punitive damages to punish and deter Defendants from such outrageous, reckless conduct and to deter other lenders, servicers, and originators who are likely to commit similarly reckless acts and omissions in the future.

157. Plaintiffs are finally entitled to such relief as is set forth in this Cause of Action and to such further relief set forth below in the section captioned Prayer for Relief which is by this reference incorporated herein.

## NINTH CAUSE OF ACTION

### BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALINGS

### (Against All Defendants)

158. Plaintiffs hereby reallege and incorporate by reference all preceding paragraphs as though fully set forth herein.

159. Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement. This implied covenant of good faith and fair dealing requires that no party will do anything that will have the effect of impairing, destroying, or

injuring the rights of the other party to receive the benefits of their agreement. The covenant implies that in all contracts each party will do all things reasonably contemplated by the terms of the contract to accomplish its purpose. The covenant protects the benefits of the contract that the parties reasonably contemplated when they entered into the agreement.

160. The terms of the loan imposed upon Defendants a duty of good faith and fair dealing in this matter.

161. Defendants enjoyed substantial discretionary power affecting the rights of Plaintiffs during the events alleged in this Complaint. Defendants were required to exercise such power in good faith.

162. In 2012, Plaintiffs began contacting Defendants to inquire about obtaining a loan assistance. Plaintiffs have been unable to obtain a permanent affordable solution to foreclosure despite their repeated requests for assistance and the repeated misinformation they have been given from Defendants.

163. Throughout Plaintiffs' attempts to apply for an affordable permanent loan modification with Defendants, Plaintiffs' efforts have been thwarted by Defendants' tactics and intention to deny Plaintiffs for a loan modification, including failing to process Plaintiffs' modification in a reasonable period of time, and ultimately refusing to even review Plaintiffs' loan for loss mitigation programs.

164. Plaintiffs have persistently attempted to fulfill all of their obligations under the agreement with Defendants, but their efforts have been intentionally thwarted and impossible due to Defendants' refusal to properly and legitimately review Plaintiffs' loan modification applications.

165. Defendants' negligent and/or willful efforts to thwart Plaintiffs' efforts to obtain a workout solution prevented Plaintiffs from fulfilling their obligations under the contract.

166. As a proximate result of Defendants' wrongful conduct, Plaintiffs have been damaged in the amount of ongoing penalties, interest and late fees, in a sum that is, as of yet unascertained, to be proven at trial. Plaintiffs will be further damaged in a like manner so long as Defendants' conduct continues, in an amount to be proven at trial.

**VERIFIED COMPLAINT**

167.    Defendants' actions in this matter have been, negligent, willful, knowing, malicious, fraudulent, and oppressive, entitling Plaintiffs to punitive damages in an amount appropriate to punish Defendants and to deter others from engaging in the same behavior.

## TENTH CAUSE OF ACTION

### QUIET TITLE

### (Against All Defendants)

168.    Plaintiffs hereby reallege and incorporate by reference all preceding paragraphs as though fully set forth herein.

169.    Plaintiffs are the legal owners of the Subject Property that is commonly known as 16206 Alpine Place, La Mirada, CA 90638[3] ("Subject Property").

170.    Plaintiffs seek to quiet title as of October 1, 2013, the date the Notice of Default was recorded.

171.    Plaintiffs seek to quiet title against the claims of PHH, Citibank Trust 2007-9, Aztec Foreclosure, and the remaining Defendants and anyone else claiming interest in the Subject Property.  Defendants and any successors or assignees have no right to title or interest in the Subject Property and no right to entertain any rights of ownership including rights of possession.

172.    Plaintiffs seek a judicial declaration that the title to the Subject Property is vested in Plaintiffs alone as the title owner of the Subject Property, and that Defendants and each of them be declared to have no interest estate, right, title or interest in the Subject Property and that Defendants, their agents and assigns, be forever enjoined from asserting any estate, right title or interest in the Subject Property.

/ / /

/ / /

---

[3]  Legal Description— Lot 25 of Tract §1689, in the City of La Mirada, County of Los Angeles, State of California, as per map recorded in Book 1215 pages 38 to 50 inclusive of maps, in the office of the County Recorder of said County.

APN: 8037-022-081

**VERIFIED COMPLAINT**

CONSUMER LITIGATION LAW CENTER, APC

173.    As Defendants do not have any legal ownership or interest in the Subject Property on the date of foreclosure, allegedly obtained the Subject Property through fraud and wrongful conduct, and failed to adhere to the strict statutory requirements to effectuate a foreclosure sale of the Subject Property, the foreclosure sale proceedings are void and invalid. Therefore, the Subject Property is still Plaintiffs' property.

174.    Further, although Plaintiffs have alleged tender as explained above, Plaintiffs still argue that tender should not be required in this action due to the layers of fraud in the underlying debt, as well as the wrongs perpetrated during the servicing.

175.    As such, and on a simple level, Plaintiffs are alleging that they do not owe Defendants the amount the claim and should not have to come out of pocket to now compensate Defendants, again, for their wrongdoing.

176.    Accordingly, the Court should rule that the Subject Property remains Plaintiffs' Property and award consequential damages as proven at trial.

## ELEVENTH CAUSE OF ACTION

### DECLARATORY RELIEF

### (Against All Defendants)

177.    Plaintiffs hereby reallege and incorporate by reference all preceding paragraphs as though fully set forth herein.

178.    An actual controversy has arisen and now exists between Plaintiffs and Defendants concerning their respective rights and duties regarding the loan or the foreclosure.

179.    These disputes concern but are not limited to the ownership rights and the validity of the commencement of the foreclosure process.

180.    Plaintiffs contend that pursuant to the loan, or any incarnation or modification hereof, Defendants do not have authority to foreclose upon and sell the Subject Property.

181.    Plaintiffs are informed and believe, and thereon allege that Defendants dispute Plaintiffs' contention and instead contend they may properly foreclose upon the Property.

/ / /

/ / /

**VERIFIED COMPLAINT**

CONSUMER LITIGATION LAW CENTER, APC

182. Plaintiffs, therefore, request a judicial determination of the rights, obligations and interest of the parties with regard to the Subject Property, and such determination is necessary and appropriate at this time under the circumstances so that all parties may ascertain and know their rights, obligations and interest with regard to the Subject Property.

183. As a result of the wrongful and unlawful foreclosure actions taken by Defendants, Plaintiffs will sustain great and irreparable injury through the permanent loss of their property. It will be impossible for Plaintiffs to obtain adequate relief by way of money damages because of the unique nature of real property and, therefore, Plaintiffs would be without an adequate remedy at law.

184. Plaintiffs request a determination of the validity of the NOD and the NTS.

185. Plaintiffs request a determination of whether any Defendant has authority to foreclose on the property.

## VI.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendants and each of them as follows:

1. To enjoin any trustee sale of Plaintiffs' Subject Property;

2. For injunctive relief as Plaintiffs are entitled to under *Civil Code* section 2924.12;

3. For compensatory damages awarded according to proof, in excess of the jurisdictional limit of this court;

4. For all special damages according to proof;

5. For punitive damages sufficient to punish the Defendants and act as a deterrent to others;

6. For all statutory damages as applicable;

/ / /

/ / /

/ / /

/ / /

33

VERIFIED COMPLAINT

CONSUMER LITIGATION LAW CENTER, APC

7. For attorney's fees and costs of suit;

8. For pre- and post-judgment interest;

9. For such other and further relief as the court deems just and proper.

Dated: March 19, 2015

CONSUMER LITIGATION LAW CENTER, APC

By: _____

September J. Katje, Esq.
Alicia Nikkhoo, Esq.
Attorneys for Plaintiffs, ATIKUR R.
KHAN and RUBYNA KHAN

---

34

**VERIFIED COMPLAINT**

**VERIFICATION**

I, ATIKUR R. KHAN, am a Plaintiff in this action. I have read the Complaint and the facts and allegations contained therein are true to the best of my knowledge, except as to those matters stated on information or belief and, as to those matters, I believe them also to be true.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed at La Mirada, California on March 17, 2015.

ATIKUR R. KHAN

**VERIFICATION**

I, RUBYNA KHAN, am a Plaintiff in this action. I have read the Complaint and the facts and allegations contained therein are true to the best of my knowledge, except as to those matters stated on information or belief and, as to those matters, I believe them also to be true. I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed at La Mirada, California on March 17, 2015.

RUBYNA KHAN

CONSUMER LITIGATION LAW CENTER, APC

35
**VERIFIED COMPLAINT**

**EXHIBIT A**



**This page is part of your document - DO NOT DISCARD**

 **20071329880** Pages:
020

| | Fee: 67.00 |
|---|---|
| Recorded/Filed in Official Records Recorder's Office, Los Angeles County, California | Tax: 0.00 |
| | Other: 0.00 |
| **06/01/07 AT 08:00AM** | Total: 67.00 |

**Title Company**

# TITLE(S) :

_____

**L E A D   S H E E T**

**Assessor's Identification Number (AIN)**
**To be completed by Examiner OR Title Company in black ink.**        **Number of AIN's Shown**

**THIS FORM IS NOT TO BE DUPLICATED**

TICOR TITLE CO
GLENDALE

Recording Requested By:

Return To:

Banco Popular, N. A.
9700 Bissonnet Street ,
Suite #1500, HOUSTON, TX
77036

Prepared By:
Suzanne Mcbride, 3000
Leadenhall Road Mount
Laurel, NJ 08054

9752276-96
8037-022-081

08/01/07

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖
20071329880

2

19

—————[Space Above This Line For Recording Data]—————

# DEED OF TRUST

MIN  100020000440301384

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are
also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated May 25, 2007
together with all Riders to this document.

**(B) "Borrower"** is Atikur R Khan and Rubyna Khan, HUSBAND AND WIFE AS JOINT
TENANTS

Borrower's address is 16206 ALPINE PLACE LA MIRADA, CA 90638
. Borrower is the trustor under this Security Instrument.

**(C) "Lender"** is Banco Popular, N. A.

Lender is a National Association
organized and existing under the laws of United States of America

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS          Form 3005  1/01

-6A(CA) (0207)
Page 1 of 15          Initials V R

VMP MORTGAGE FORMS - (800)521-7291

3

Lender's address is 3000 Leadenhall Road Mount Laurel, NJ 08054

(D) "Trustee" is First American Title

(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(F) "Note" means the promissory note signed by Borrower and dated May 25, 2007
The Note states that Borrower owes Lender Seven Hundred Fifty Thousand Dollars and Zero Cents                                                                      Dollars
(U.S. $750,000.00           ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than June 1st, 2037

(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider      ☐ Condominium Rider            ☐ Second Home Rider
☐ Balloon Rider              ☒ Planned Unit Development Rider  ☐ 1-4 Family Rider
☐ VA Rider                   ☐ Biweekly Payment Rider       ☐ Other(s) [specify]

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) "Escrow Items" means those items that are described in Section 3.

(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

07 1329880

-6A(CA) (0207)                        Page 2 of 15          Initials                Form 3005   1/01

4

(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) "Successor In Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY
The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the
          COUNTY                    of                    LOS ANGELES                    :
          [Type of Recording Jurisdiction]                    [Name of Recording Jurisdiction]
Being the same premises conveyed to _____ by deed
dated _____ and recorded in the _____
county recorder's office in deed book _____ page _____.
This is a first and paramount mortgage lien on the above described premises.


                              SEE EXHIBIT "A
                                ATTACHED


Parcel ID Number:  8037-022-081                          which currently has the address of
16206  ALPINE PLACE                                                                      [Street]
LA MIRADA                                          [City], California 90638          [Zip Code]
("Property Address"):

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

    BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances

-6A(CA) (0207)                              Page 3 of 15              Initials          Form 3005  1/01

of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be

-6A(CA) (0207)                          Page 4 of 15          Initials: _____          Form 3005   1/01

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

-6A(CA) (0207)                        Page 5 of 15                    Initials ___          Form 3005   1/01

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

-6A(CA) (0207)                          Page 6 of 15              Initials _____            Form 3005   1/01

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

-6A(CA) (0207)                    Page 7 of 15          Initials V P          Form 3006   1/01

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

-6A(CA) (0207)                          Page 8 of 15          Initials _____          Form 3005   1/01

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender

-6A(CA) (0207)                          Page 9 of 15                          Initials: _____                          Form 3005   1/01

to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

Initials _N.R._

-6A(CA) (0207)                         Page 10 of 15                         Form 3005   1/01

12

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

-6A(CA) (0207)                    Page 11 of 15          Initials N P          Form 3005   1/01

07 1529880

13

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

-6A(CA) (0207)                    Page 12 of 16          Initials        Form 3005   1/01

14

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. Reconveyance. Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. Substitute Trustee. Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. Statement of Obligation Fee. Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

-6A(CA) (0207)                    Page 13 of 18                 Initials           Form 3005   1/01

07 1329880

15

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____        _____ (Seal)
                                 Atikur R Khan            -Borrower


_____        _____ (Seal)
                                 Rubyna Khan              -Borrower


_____ (Seal)   _____ (Seal)
                -Borrower                          -Borrower


_____ (Seal)   _____ (Seal)
                -Borrower                          -Borrower


_____ (Seal)   _____ (Seal)
                -Borrower                          -Borrower


-6A(CA) (0207)              Page 14 of 15              Form 3005   1/01

14

State of California
County of LOS ANGELES

                                                    } ss.
On May 25th, 2007                    before me, Sandra Trujillo Notary Public
                                                              personally appeared
Atikur R Khan, Rubyna Khan

, personally known to me
(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed
to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their
authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity
upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.



SANDRA TRUJILLO
Commission # 1518786
Notary Public - California
Los Angeles County
My Comm. Expires Oct 15, 2008

                                                                        (Seal)

07 1329880

-6A(CA) (0207)              Page 15 of 15        Initials _____      Form 3005   1/01

ORDER NO.: 9752276-96

## EXHIBIT "A"

LOT 25 OF TRACT 51689, IN THE CITY OF LA MIRADA, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA AS PER MAP RECORDED IN BOOK 1215 PAGES 38 TO 50 INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPT THEREFROM ALL OIL, GAS, MINERALS AND OTHER HYDROCARBON SUBSTANCES, LYING BELOW A DEPTH OF 500 FEET, WITHOUT THE RIGHT OF SURFACE ENTRY, AS EXCEPTED OR RESERVED BY VARIOUS INSTRUMENTS OF RECORD, AS RECORDED IN THE OFFICE OF THE COUNTY RECORDER OF LOS ANGELES COUNTY, STATE OF CALIFORNIA

Form PR-S                              Page 3

*44030138*

# Interest Only Fixed Rate Note

| **May 25, 2007** | **LA MIRADA** | **California** |
|---|---|---|
| [Date] | [City] | [State] |

**16206 ALPINE PLACE LA MIRADA, CA 90638**

[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $750,000.00 (this amount is called "Principal"), plus interest, to the Lender. The Lender is **Banco Popular, N. A.**.

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 6.375%.

The interest rate required by this section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

**(A) Time and Place of Payments**

I will make a payment every month. This payment will be for interest only for the first 120 months, and then will consist of principal and interest.

I will make my monthly payment on the 01st day of each month beginning on July 1st, 2007. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date, and if the payment includes both principal and interest it will be applied to interest before Principal. If, on June 1st, 2037, I still owe amounts under this Note, I will pay these amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at **3000 Leadenhall Road Mount Laurel, NJ 08054** or at a different place if required by the Note Holder.

**(B) Amount of Monthly Payments**

My monthly payment will be in the amount of U.S. $3984.38 for the first 120 months of this Note, and thereafter will be in the amount of U.S. $5,536.75 The Note Holder will notify me prior to the date of change in monthly payment.

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date of my monthly payment

**MULTISTATE Interest Only Fixed Rate Note**

Initials _____

unless the Note Holder agrees in writing to those changes However, if the partial Prepayment is made during the period when my monthly payments consist only of interest, the amount of the monthly payment will decrease for the remainder of the term when my payments consist only as interest as well as during the time that my payments consist of principal and interest. If the partial Prepayment is made during the period when my payments consist of principal and interest, the amount of my monthly payment will not decrease; however, the principal and the interest required under this Note will be paid prior to the Maturity Date.

**5. LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then. (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment

**6. BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charge for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of Fifteen calendar days after the date it is due, I will pay a late charge to the Note Holder. The Amount of the charge will be 5.00% of my overdue payment of interest and/or principal and interest. I will pay this late charge promptly but only once on each late payment

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**7. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
Atikur R Khan

_____ (Seal)
Rubyna Khan

_____ (Seal)

_____ (Seal)

_____ (Seal)

_____ (Seal)

_____ (Seal)

_____ (Seal)

06781003 (06 30 06)                    Page 3 of 3                    [Sign Original Only]

# SIGNATURE/NAME AFFIDAVIT

DATE: May 25, 2007

LOAN #: 0044030138

BORROWER Atikur R Khan, Rubyna Khan

THIS IS TO CERTIFY THAT MY LEGAL SIGNATURE IS AS WRITTEN AND TYPED BELOW.
(This signature must <u>exactly</u> match signatures on the Note and Mortgage or Deed of Trust.)

Atikur R Khan

_____          _____
(Print or Type Name)              Signature

(If applicable, complete the following.)

I AM ALSO KNOWN AS:

ATIKUR RAHMAN Khan            _____
_____          Signature
(Print or Type Name)

_____          _____
(Print or Type Name)              Signature

_____          _____
(Print or Type Name)              Signature

_____          _____
(Print or Type Name)              Signature

and that                                                     are one

and the same person.

State/Commonwealth of CA
County/Parish of LOS ANGELES

Subscribed and sworn (affirmed) before me
this 25

┌─────────────────────────────┐
│      SANDRA TRUJILLO         │
│    Commission # 1518786      │
│   Notary Public - California │
│     Los Angeles County       │
│  My Comm. Expires Oct 15, 2008│
└─────────────────────────────┘

Sandra Trujillo

, 2007

Notary Public in and for
the State/Commonwealth of CA
County/Parish of LOS ANGELES
My Commission Expires

VMP-304 (0103) 01            VMP Mortgage Solutions (800)521-7291            3/01

5/24/2007 6:33 PM

# SIGNATURE/NAME AFFIDAVIT

DATE. May 25, 2007

LOAN #. 0044030136

BORROWER: Atikur R Khan, Rubyna Khan

THIS IS TO CERTIFY THAT MY LEGAL SIGNATURE IS AS WRITTEN AND TYPED BELOW.
(This signature must exactly match signatures on the Note and Mortgage or Deed of Trust )

Rubyna Khan

_____
(Print or Type Name)

_____
Signature

(If applicable, complete the following )

I AM ALSO KNOWN AS.

_____
(Print or Type Name)

_____
Signature

_____
(Print or Type Name)

_____
Signature

_____
(Print or Type Name)

_____
Signature

_____
(Print or Type Name)

_____
Signature

and that

and the same person

are one

State/Commonwealth of CA
County/Parish of LOS ANGELES

Subscribed and sworn (affirmed) before me
this 25th        day of  May          , 2007

SANDRA TRUJILLO
Commission # 1518786
Notary Public - California
Los Angeles County
My Comm. Expires Oct 15, 2008

Notary Public in and for
the State/Commonwealth of CA
County/Parish of LOS ANGELES
My Commission Expires·

VMP-304 (0103) 01              VMP Mortgage Solutions (800)521-7291              3/01

5/24/2007 6:23 PM

# PLANNED UNIT DEVELOPMENT RIDER

THIS PLANNED UNIT DEVELOPMENT RIDER is made this 25th                    day of
May, 2007                              , and is incorporated into and shall be
deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the
"Security Instrument") of the same date, given by the undersigned (the "Borrower") to
secure Borrower's Note to Banco Popular, N. A.

(the "Lender") of the same date and covering the Property described in the Security
Instrument and located at: 16206 ALPINE PLACE LA MIRADA, CA 90638

[Property Address]
The Property includes, but is not limited to, a parcel of land improved with a dwelling,
together with other such parcels and certain common areas and facilities, as described in
the COVENANTS, CONDITIONS AND RESTRICTIONS

(the "Declaration"). The Property is a part of a planned unit development known as
HILLSBOROUGH COLLECTION

[Name of Planned Unit Development]
(the "PUD"). The Property also includes Borrower's interest in the homeowners association or
equivalent entity owning or managing the common areas and facilities of the PUD (the
"Owners Association") and the uses, benefits and proceeds of Borrower's interest.
    PUD COVENANTS. In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:
    A. PUD Obligations. Borrower shall perform all of Borrower's obligations under the PUD's
Constituent Documents. The "Constituent Documents" are the (i) Declaration; (ii) articles of
incorporation, trust instrument or any equivalent document which creates the Owners
Association; and (iii) any by-laws or other rules or regulations of the Owners Association.
Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the
Constituent Documents.

**MULTISTATE PUD RIDER - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**
**Form 3150 1/01**
                                    Page 1 of 3                    Initials: _V R_
-7R (0405)          VMP Mortgage Solutions, Inc. (800)521-7291

\\9

**B. Property Insurance.** So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the Property which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, for which Lender requires insurance, then: (i) Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender. Lender shall apply the proceeds to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

Customer

Initials____

-7R (0405)                          Page 2 of 3                          Form 3150 1/01

**BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this PUD Rider.**

_____ (Seal)
Atikur R Khan                -Borrower

_____ (Seal)
Rubyna Khan                  -Borrower

_____ (Seal)
                             -Borrower

_____ (Seal)
                             -Borrower

_____ (Seal)
                             -Borrower

_____ (Seal)
                             -Borrower

_____ (Seal)
                             -Borrower

_____ (Seal)
                             -Borrower

-7R (0405)                Page 3 of 3                Form 3150 1/01

07 1329880

# EXHIBIT B

**This page is part of your document - DO NOT DISCARD**



# 20131353676



**Pages:**
**0003**

**Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California**

**09/17/13 AT 08:00AM**

| | |
|---|---|
| FEES: | 21.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 21.00 |



**L E A D S H E E T**

201309170230004

00008310794

005775886

**SEQ:**
**02**

**DAR - Title Company (Hard Copy)**



**THIS FORM IS NOT TO BE DUPLICATED**

T35

Recording Requested By:
PHH Mortgage Corporation (PHHM)

When Recorded Return To.

AZTEC FORECLOSURE CORPORATION
3636 N. CENTRAL AVE
SUITE 400
PHOENIX, AZ 85012-258

*1301/1885*

09/17/2013

*20131353676*

## CORPORATE ASSIGNMENT OF DEED OF TRUST

Los Angeles, California
SELLER'S SERVICING #:0138-KHAN "KHAN"
SELLER'S LENDER ID#: LOGAST

MERS #: 100020000440301384 SIS #: 1-888-679-6377

For Value Received, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR BANCO POPULAR, N.A., ITS SUCCESSORS AND ASSIGNS hereby grants, assigns and transfers to CITIBANK, N.A. AS TRUSTEE FOR GSAA HOME EQUITY TRUST 2007-9 at 9062 OLD ANNAPOLIS RD, COLUMBIA, MD 21045 all beneficial interest under that certain Deed of Trust dated 05/25/2007 , in the amount of $750,000.00, executed by ATIKUR R KHAN AND RUBYNA KHAN, HUSBAND AND WIFE AS JOINT TENANTS to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR BANCO POPULAR, N.A. and Recorded: 06/01/2007 in Book: N/A Page: N/A as Instrument No.: 20071329880 in the County of Los Angeles, State of California.

-LOAN MODIFICATION Dated: 11/17/2009 Recorded: 07/20/2010 in Book: N/A Page: N/A as Instrument No.: 20100992715, between ATIKUR R KHAN AND RUBYNA KHAN, HUSBAND AND WIFE AS JOINT TENANTS and BANCO POPULAR, N.A., Loan Amount: $757,303.68
-LOAN MODIFICATION Dated: 11/01/2009 Recorded: 08/06/2010 in Book: N/A Page: N/A as Instrument No.: 20101095000, between ATIKUR R KHAN AND RUBYNA KHAN, HUSBAND AND WIFE AS JOINT TENANTS and BANCO POPULAR, N A., Loan Amount: $757,303.68

Therein described or referred to, in said Deed of Trust, the money due and to become due thereon with interest, and all rights accrued or to accrue under said Deed of Trust.

In witness whereof this instrument is executed.

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR BANCO POPULAR, N.A., ITS SUCCESSORS AND ASSIGNS
On 9-5-13

DANA CONSALO, Assistant Secretary

CORPORATE ASSIGNMENT OF DEED OF TRUST Page 2 of 2

STATE OF _NJ_
COUNTY OF _Burlington_

On _9/5/12_, before me, _Karen L. Gordon NP_, a Notary Public in and for _Burlington_ in the State of _NJ_, personally appeared DANA CONSALO, Assistant Secretary, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal,

Notary Expires _3/22/17_

KAREN L. GORDON
NOTARY PUBLIC OF NEW JERSEY
My Commission Expires 3/22/2017

(This area for notarial seal)

**EXHIBIT C**



**This page is part of your document - DO NOT DISCARD**



## 20140001195



**Pages:**
**0003**

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**01/02/14 AT 08:00AM**

| | |
|---|---|
| FEES: | 28.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 28.00 |



**L E A D S H E E T**



201401020110007

00008717049



005964590

**SEQ:**
**20**

**DAR - Title Company (Hard Copy)**



**THIS FORM IS NOT TO BE DUPLICATED**          T35

LOS ANGELES,CA                    Page 1 of 3              Printed on 2/12/2015 9:00:58 AM
Document: NT 2014.1195



WHEN RECORDED MAIL TO:

Aztec Foreclosure Corporation
3636 N. Central Ave., Suite #400
Phoenix, AZ 85012

01/02/2014

*20140001195*

Space above this line for recorder's use only

Trustee Sale No. 13-520049 PHH
Title Order No. 130171885-CA-MAI
APN 8037-022-081

## NOTICE OF TRUSTEE'S SALE

YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED 05/25/07. UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE.  IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDINGS AGAINST YOU, YOU SHOULD CONTACT A LAWYER.

On **01/23/14** at **9:00 am**, Aztec Foreclosure Corporation as the duly appointed Trustee under and pursuant to the power of sale contained in that certain Deed of Trust executed by **Atikur R. Khan and Rubyna Khan, Husband and Wife As Joint Tenants**, as Trustor(s), in favor of Mortgage Electronic Registration Systems, Inc., solely as Nominee for Banco Popular, N.A., as Beneficiary, **Recorded on 06/01/07 in** Instrument No. 20071329880 and thereafter **loan modification recorded on 7/20/2010 at recorder's no. 20100992715 and thereafter loan modification recorded on 8/06/2010 at recorder's no.** 20101095000 of official records in the Office of the county recorder of LOS ANGELES County, California; Citibank, N.A. as Trustee for GSAA Home Equity Trust 2007-9, as the current Beneficiary, WILL SELL AT PUBLIC AUCTION TO THE HIGHEST BIDDER FOR CASH (payable at time of sale in lawful money of the United States, by cash, a cashier's check drawn by a state or national bank, a check drawn by a state or federal credit union, or a check drawn by a state or federal savings and loan association, savings association, or savings bank specified in section 5102 of the Financial Code and authorized to do business in this state), **Behind the fountain located in Civic Center Plaza, 400 Civic Center Plaza, Pomona, CA,** all right, title and interest conveyed to and now held by it under said Deed of Trust in the property situated in said County, California described as:
**16206 ALPINE PLACE, LA MIRADA, CA 90638**

The property heretofore described is being sold "as is".

The undersigned Trustee disclaims any liability for any incorrectness of the street address and other common designation, if any, shown herein.  Said sale will be made, but without covenant or warranty, expressed or implied, regarding title, possession, or encumbrances, to pay the remaining principal sum of the note(s) secured by said Deed of Trust, with interest thereon, as provided in said note(s), advances, if any, under the terms of the Deed of Trust, estimated fees, charges and expenses of the Trustee and of the trusts created by said Deed of Trust, to-wit: **$803,806.79**  (Estimated)

Accrued interest and additional advances, if any, will increase this figure prior to sale.

Page 1 – Notice of Sale

3

**T.S. #:**      **13-520049 PHH**
**ORDER #:**    **130171885-CA-MAI**

The undersigned caused said Notice of Default and Election to Sell to be recorded in the county where the real property is located and more than three months have elapsed since such recordation.

DATE: _12-19-13_

_Elaine Malone_
Elaine Malone
Assistant Secretary & Assistant Vice President
Aztec Foreclosure Corporation
6 Venture, Suite 305
Irvine, CA 92618
Phone: (877) 257-0717 or (602) 638-5700
Fax: (602) 638-5748
www.aztectrustee.com

**NOTICE TO POTENTIAL BIDDERS:** If you are considering bidding on this property lien, you should understand that there are risks involved in bidding at a trustee auction. You will be bidding on a lien, not on the property itself. Placing the highest bid at a trustee auction does not automatically entitle you to free and clear ownership of the property. You should also be aware that the lien being auctioned off may be a junior lien. If you are the highest bidder at the auction, you are or may be responsible for paying off all liens senior to the lien being auctioned off, before you can receive clear title to the property. You are encouraged to investigate the existence, priority, and size of outstanding liens that may exist on this property by contacting the county recorder's office or a title insurance company, either of which may charge you a fee for this information. If you consult either of these resources, you should be aware that the same lender may hold more than one mortgage or deed of trust on the property.

**NOTICE TO PROPERTY OWNER:** The sale date shown on this notice of sale may be postponed one or more times by the mortgagee, beneficiary, trustee, or a court, pursuant to Section 2924g of the California Civil Code. The law requires that information about trustee sale postponements be made available to you and to the public, as a courtesy to those not present at the sale. If you wish to learn whether your sale date has been postponed, and, if applicable, the rescheduled time and date for the sale of this property, you may call or visit the Internet Web site, using the file number assigned to this case 13-520049. Information about postponements that are very short in duration or that occur close in time to the scheduled sale may not immediately be reflected in the telephone information or on the Internet Web site. The best way to verify postponement information is to attend the scheduled sale.

| Call 714-573-1965 http://www.Priorityposting.com | Or | Aztec Foreclosure Corporation (877) 257-0717 www.aztectrustee.com |
| --- | --- | --- |

Page 2

# EXHIBIT  D



This page is part of your document - **DO NOT DISCARD**



## 20131417086



**Pages:**
**0005**

**Recorded/Filed In Official Records**
**Recorder's Office, Los Angeles County,**
**California**

**10/01/13 AT 08:00AM**

| | | |
|---|---|---|
| **FEES:** | | 27.00 |
| **TAXES:** | | 0.00 |
| **OTHER:** | | 0.00 |
| **PAID:** | | 27.00 |



**L E A D S H E E T**



201310010120016

00008374502



005805887

**SEQ:**
**21**

**DAR - Title Company (Hard Copy)**



**THIS FORM IS NOT TO BE DUPLICATED**

t35

LOS ANGELES,CA                    Page 1 of 5                    Printed on 2/12/2015 9:00:58 AM
Document: ND 2013.1417086



RECORDING REQUESTED BY
AND WHEN RECORDED MAIL TO

AZTEC FORECLOSURE CORPORATION
3636 N. Central Ave., Suite #400
Phoenix, AZ 85012

_____        Space above this line for recorder's use only 

APN # 8037-022-081
Property Address: 16206 Alpine Place, La Mirada, CA 90638
Trustee Sale No. 13-520049PHH   Title Order No. 130171885-CA-MAI

## NOTICE OF DEFAULT AND ELECTION TO SELL
## UNDER DEED OF TRUST

### IMPORTANT NOTICE

**IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE
BEHIND IN YOUR PAYMENTS, IT MAY BE SOLD WITHOUT ANY
COURT ACTION,** and you may have the legal right to bring your account in good
standing by paying all of your past due payments plus permitted costs and expenses
within the time permitted by law for reinstatement of your account, which is normally five
business days prior to the date set for the sale of your property.  No sale date may be
set until approximately 90 days from the date this notice of default may be recorded
(which date of recordation appears on this notice).

The amount is $18,557.59 as of September 3, 2013 and will increase until your account
becomes current.

While your property is in foreclosure, you still must pay other obligations (such as
insurance and taxes) required by your note and deed of trust or mortgage.  If you fail to
make future payments on the loan, pay taxes on the property, provide insurance on the
property, or pay other obligations as required in the note and deed of trust or mortgage,
the beneficiary or mortgagee may insist that you do so in order to reinstate your account
in good standing.  In addition, the beneficiary or mortgagee may require as a condition
to reinstatement that you provide reliable written evidence that you paid all senior liens,
property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written
itemization of the entire amount you must pay.  You may not have to pay the entire
unpaid portion of your account, even though full payment was demanded, but you must
pay all amounts in default at the time payment is made.  However, you and your

1 – Notice of Default

3

**T.S. #: 13-520049PHH**
**ORDER #: 130171885-CA-MAI**
**Notice of Default - Aztec**

beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than three months after this notice of default is recorded) to, among other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of the property by paying the entire amount demanded by your creditor.

To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:

> Citibank, N.A. as Trustee for GSAA Home Equity Trust 2007-9 c/o PHH Mortgage Corporation
> C/O Aztec Foreclosure Corporation, 3636 N. Central Ave., Suite #400, Phoenix, AZ 85012, (602) 638-5700 or (877)257-0717.

If you have any questions, you should contact a lawyer or the governmental agency, which may have insured your loan. Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale, provided the sale is concluded prior to the conclusion of the foreclosure.

## REMEMBER, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION

NOTICE IS HEREBY GIVEN THAT: Aztec Foreclosure Corporation is the duly appointed Substituted Trustee, or acting as agent for the beneficiary or trustee under a **Deed of Trust dated 05/25/07, executed by Atikur R. Khan and Rubyna Khan, Husband and Wife As Joint Tenants, as trustor(s), to secure obligations in favor of Mortgage Electronic Registration Systems, Inc., solely as Nominee for Banco Popular, N.A., as Beneficiary recorded on June 1, 2007 in Instrument No. 20071329880 and thereafter loan modification recorded on 7/20/2010 at recorder's no. 20100992715 and thereafter loan modification recorded on 8/06/2010 at recorder's no. 20101095000 of official records in the Office of the Recorder of LOS ANGELES County, California, as more fully described on said Deed of Trust.**

Including the Note(s) for the sum of **$750,000.00** that the beneficial interest under said Deed of Trust and the obligations secured thereby are presently held by the beneficiary; that a breach of, and default in, the obligations for which said Deed of Trust is security has occurred in that the payment has not been made of:

Page 2 of 3

4

**T.S. #: 13-520049PHH**
**ORDER #: 130171885-CA-MAI**
**Notice of Default - Aztec**

THE INSTALLMENT OF PRINCIPAL AND/OR INTEREST WHICH BECAME DUE
05/01/13 AND ALL SUBSEQUENT INSTALLMENTS OF PRINCIPAL AND/OR
INTEREST, TOGETHER WITH LATE CHARGES, IMPOUNDS, INSURANCE
PREMIUMS AND/OR OTHER ADVANCES, TAXES, DELINQUENT PAYMENTS ON
SENIOR LIENS, ASSESSMENTS, ATTORNEY'S FEES AND COURT COSTS
ARISING FROM THE BENEFICIARY'S PROTECTION OF ITS SECURITY, AND ANY
OTHER FEES AND COSTS PERMITTED UNDER THE DEED OF TRUST,
PROMISSORY NOTE, AND RELATED DOCUMENTS AND ALL OF WHICH MUST BE
CURED AS A CONDITION OF REINSTATEMENT.

That by reason thereof, the present Beneficiary under such Deed of Trust has deposited
with Aztec Foreclosure Corporation, a true and correct copy of such Deed of Trust and
all documents evidencing the obligations secured thereby, and has declared and does
hereby declare all sums secured thereby immediately due and payable and has elected
and does hereby elect to cause the trust property to be sold to satisfy the obligations
secured thereby.

Where required by law, a declaration pursuant to California Civil Code Section 2923.5
or 2923.55 is attached to this notice.

DATE:  09/27/13

AZTEC FORECLOSURE CORPORATION
As Agent

Elaine Malone
Assistant Secretary & Assistant Vice President

Page 3 of 3

5

## California Declaration of Compliance
### (Civ. Code Section 2923.55(c))

Borrower(s): ATIKUR R KHAN
Trustee's Sale No.:
Loan No.: 0138

The undersigned declares as follows:

I am employed by the undersigned mortgage servicer, and I have reviewed its business records for the borrower's loan, including the borrower's loan status and loan information, to substantiate the borrower's present loan default and the right to foreclose. The information set forth herein is accurate, complete and supported by competent and reliable evidence that I have reviewed in the mortgage servicer's business records. Those records reflect one of the following.

☐   The mortgage servicer contacted the borrower to assess the borrower's financial situation and to explore options for the borrower to avoid foreclosure as required by California Civil Code § 2923.55. Thirty days, or more, have passed since the initial contact was made.

☒   The mortgage servicer has exercised due diligence to contact the borrower pursuant to California Civil Code § 2923.55(f) to "assess the borrower's financial situation and explore options for the borrower to avoid foreclosure." Thirty (30) days, or more, have passed since these due diligence efforts were satisfied.

☐   The mortgage servicer was not required to comply with California Civil Code § 2923.55 because the individual does not meet the definition of a "borrower" under Civil Code §2920.5(c).

☐   No contact was made with the borrower pursuant to Civil Code § 2923.55 because the above-referenced loan is not secured by a first lien mortgage or deed of trust that secures a loan described in Civil Code § 2924.15(a)

Dated: 08/02/2013

Beneficiary / Holder Name: PHH Mortgage Corporation

By: _Angel Young_

Print name: Angel Young

ATTACHMENT TO NOTICE OF DEFAULT

COPY

# By Fax

CM-010

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address):
September J. Katje, Esq. (SBN 227896), Alicia Nikkhoo, Esq. (SBN 297290)
Consumer Litigation Law Center, APC
100 North Citrus Street, Suite 408
West Covina, CA 91791
TELEPHONE NO. (800) 787-5616     FAX NO. (888) 909-7947
ATTORNEY FOR (Name): Plaintiffs Atikur R. Khan and Rubyna Khan

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  Los Angeles
STREET ADDRESS: 12720 Norwalk Blvd.
MAILING ADDRESS: 12720 Norwalk Blvd.
CITY AND ZIP CODE: Norwalk, CA 90650
BRANCH NAME: Norwalk Courthouse

CASE NAME:
Khan v. PHH Mortgage Corporation, et al.

FOR COURT USE ONLY

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

MAR 19 2015

Sherri R. Carter, Executive Officer/Clerk

By Angelica Silva, Deputy

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: |
|---|---|---|
| ☑ Unlimited (Amount demanded exceeds $25,000) ☐ Limited (Amount demanded is $25,000 or less) | ☐ Counter   ☐ Joinder<br>Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | **VC064664**<br>JUDGE<br>DEPT |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
- ☐ Auto (22)
- ☐ Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
- ☐ Asbestos (04)
- ☐ Product liability (24)
- ☐ Medical malpractice (45)
- ☐ Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
- ☐ Business tort/unfair business practice (07)
- ☐ Civil rights (08)
- ☐ Defamation (13)
- ☐ Fraud (16)
- ☐ Intellectual property (19)
- ☐ Professional negligence (25)
- ☐ Other non-PI/PD/WD tort (35)

**Employment**
- ☐ Wrongful termination (36)
- ☐ Other employment (15)

**Contract**
- ☐ Breach of contract/warranty (06)
- ☐ Rule 3.740 collections (09)
- ☐ Other collections (09)
- ☐ Insurance coverage (18)
- ☑ Other contract (37)

**Real Property**
- ☐ Eminent domain/Inverse condemnation (14)
- ☐ Wrongful eviction (33)
- ☐ Other real property (26)

**Unlawful Detainer**
- ☐ Commercial (31)
- ☐ Residential (32)
- ☐ Drugs (38)

**Judicial Review**
- ☐ Asset forfeiture (05)
- ☐ Petition re: arbitration award (11)
- ☐ Writ of mandate (02)
- ☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
- ☐ Antitrust/Trade regulation (03)
- ☐ Construction defect (10)
- ☐ Mass tort (40)
- ☐ Securities litigation (28)
- ☐ Environmental/Toxic tort (30)
- ☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
- ☐ Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
- ☐ RICO (27)
- ☐ Other complaint (not specified above) (42)

**Miscellaneous Civil Petition**
- ☐ Partnership and corporate governance (21)
- ☐ Other petition (not specified above) (43)

2. This case ☐ is ☑ is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties
   b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. ☐ Substantial amount of documentary evidence
   d. ☐ Large number of witnesses
   e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought (check all that apply): a. ☑ monetary   b. ☑ nonmonetary; declaratory or injunctive relief   c. ☑ punitive
4. Number of causes of action (specify): 11
5. This case ☐ is ☑ is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)

Date: March 19, 2015
Alicia Nikkhoo, Esq.
_____
(TYPE OR PRINT NAME)                    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courtinfo.ca.gov

COPY By Fax

| SHORT TITLE: Khan v. PHH Mortgage Corporation, et.al. | CASE NUMBER VC064664 |

## CIVIL CASE COVER SHEET ADDENDUM AND
## STATEMENT OF LOCATION
## (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

This form is required pursuant to Local Rule 2.0 in all new civil case filings in the Los Angeles Superior Court.

Item I. Check the types of hearing and fill in the estimated length of hearing expected for this case:

JURY TRIAL? ☑ YES  CLASS ACTION? ☐ YES  LIMITED CASE? ☐ YES  TIME ESTIMATED FOR TRIAL 3-5  ☐ HOURS/ ☑ DAYS

Item II. Indicate the correct district and courthouse location (4 steps – If you checked "Limited Case", skip to Item III, Pg. 4):

**Step 1:** After first completing the Civil Case Cover Sheet form, find the main Civil Case Cover Sheet heading for your case in the left margin below, and, to the right in Column A, the Civil Case Cover Sheet case type you selected.

**Step 2:** Check **one** Superior Court type of action in Column B below which best describes the nature of this case.

**Step 3:** In Column C, circle the reason for the court location choice that applies to the type of action you have checked. For any exception to the court location, see Local Rule 2.0.

| Applicable Reasons for Choosing Courthouse Location (see Column C below) |

1. Class actions must be filed in the Stanley Mosk Courthouse, central district.
2. May be filed in central (other county, or no bodily injury/property damage).
3. Location where cause of action arose.
4. Location where bodily injury, death or damage occurred.
5. Location where performance required or defendant resides.
6. Location of property or permanently garaged vehicle.
7. Location where petitioner resides.
8. Location wherein defendant/respondent functions wholly.
9. Location where one or more of the parties reside.
10. Location of Labor Commissioner Office.

**Step 4:** Fill in the information requested on page 4 in Item III; complete Item IV. Sign the declaration.

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|---|
| Auto Tort | Auto (22) | ☐ A7100  Motor Vehicle - Personal Injury/Property Damage/Wrongful Death | 1., 2., 4. |
| | Uninsured Motorist (46) | ☐ A7110  Personal Injury/Property Damage/Wrongful Death – Uninsured Motorist | 1., 2., 4. |
| Other Personal Injury/ Property Damage/ Wrongful Death Tort | Asbestos (04) | ☐ A6070  Asbestos Property Damage | 2. |
| | | ☐ A7221  Asbestos - Personal Injury/Wrongful Death | 2. |
| | Product Liability (24) | ☐ A7260  Product Liability (not asbestos or toxic/environmental) | 1., 2., 3., 4., 8. |
| | Medical Malpractice (45) | ☐ A7210  Medical Malpractice - Physicians & Surgeons | 1., 4. |
| | | ☐ A7240  Other Professional Health Care Malpractice | 1., 4. |
| | Other<br>Personal Injury<br>Property Damage<br>Wrongful Death<br>(23) | ☐ A7250  Premises Liability (e.g., slip and fall) | 1., 4. |
| | | ☐ A7230  Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, vandalism, etc.) | 1., 4. |
| | | ☐ A7270  Intentional Infliction of Emotional Distress | 1., 3. |
| | | ☐ A7220  Other Personal Injury/Property Damage/Wrongful Death | 1., 4. |

LACIV 109 (Rev. 03/11)
LASC Approved 03-04

CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION

Local Rule 2.0
Page 1 of 4

| SHORT TITLE: Khan v. PHH Mortgage Corporation, et al. | CASE NUMBER |
|---|---|

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|---|
| **Non-Personal Injury/ Property Damage/ Wrongful Death Tort** | Business Tort (07) | ☐ A6029  Other Commercial/Business Tort (not fraud/breach of contract) | 1., 3. |
| | Civil Rights (08) | ☐ A6005  Civil Rights/Discrimination | 1., 2., 3. |
| | Defamation (13) | ☐ A6010  Defamation (slander/libel) | 1., 2., 3. |
| | Fraud (16) | ☐ A6013  Fraud (no contract) | 1., 2., 3. |
| | Professional Negligence (25) | ☐ A6017  Legal Malpractice<br>☐ A6050  Other Professional Malpractice (not medical or legal) | 1., 2., 3.<br>1., 2., 3. |
| | Other (35) | ☐ A6025  Other Non-Personal Injury/Property Damage tort | 2., 3. |
| **Employment** | Wrongful Termination (36) | ☐ A6037  Wrongful Termination | 1., 2., 3. |
| | Other Employment (15) | ☐ A6024  Other Employment Complaint Case<br>☐ A6109  Labor Commissioner Appeals | 1., 2., 3.<br>10. |
| **Contract** | Breach of Contract/ Warranty (06)<br>(not insurance) | ☐ A6004  Breach of Rental/Lease Contract (not unlawful detainer or wrongful eviction)<br>☐ A6008  Contract/Warranty Breach -Seller Plaintiff (no fraud/negligence)<br>☐ A6019  Negligent Breach of Contract/Warranty (no fraud)<br>☐ A6028  Other Breach of Contract/Warranty (not fraud or negligence) | 2., 5.<br>2., 5.<br>1., 2., 5.<br>1., 2., 5. |
| | Collections (09) | ☐ A6002  Collections Case-Seller Plaintiff<br>☐ A6012  Other Promissory Note/Collections Case | 2., 5., 6.<br>2., 5. |
| | Insurance Coverage (18) | ☐ A6015  Insurance Coverage (not complex) | 1., 2., 5., 8. |
| | Other Contract (37) | ☑ A6009  Contractual Fraud<br>☐ A6031  Tortious Interference<br>☐ A6027  Other Contract Dispute(not breach/insurance/fraud/negligence) | 1., 2., 3., 5.<br>1., 2., 3., 5.<br>1., 2., 3., 8. |
| **Real Property** | Eminent Domain/Inverse Condemnation (14) | ☐ A7300  Eminent Domain/Condemnation          Number of parcels_____ | 2. |
| | Wrongful Eviction (33) | ☐ A6023  Wrongful Eviction Case | 2., 6. |
| | Other Real Property (26) | ☐ A6018  Mortgage Foreclosure<br>☐ A6032  Quiet Title<br>☐ A6060  Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2., 6.<br>2., 6.<br>2., 6. |
| **Unlawful Detainer** | Unlawful Detainer-Commercial (31) | ☐ A6021  Unlawful Detainer-Commercial (not drugs or wrongful eviction) | 2., 6. |
| | Unlawful Detainer-Residential (32) | ☐ A6020  Unlawful Detainer-Residential (not drugs or wrongful eviction) | 2., 6. |
| | Unlawful Detainer-Post-Foreclosure (34) | ☐ A6020F Unlawful Detainer-Post-Foreclosure | 2., 6. |
| | Unlawful Detainer-Drugs (38) | ☐ A6022  Unlawful Detainer-Drugs | 2., 6. |

LACIV 109 (Rev. 03/11)
LASC Approved 03-04

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

Local Rule 2.0
Page 2 of 4

| SHORT TITLE: Khan v. PHH Mortgage Corporation, et al. | CASE NUMBER |
|---|---|

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|---|
| **Judicial Review** | Asset Forfeiture (05) | ☐ A6108  Asset Forfeiture Case | 2., 6. |
| | Petition re Arbitration (11) | ☐ A6115  Petition to Compel/Confirm/Vacate Arbitration | 2., 5. |
| | Writ of Mandate (02) | ☐ A6151  Writ - Administrative Mandamus | 2., 8. |
| | | ☐ A6152  Writ - Mandamus on Limited Court Case Matter | 2. |
| | | ☐ A6153  Writ - Other Limited Court Case Review | 2. |
| | Other Judicial Review (39) | ☐ A6150  Other Writ /Judicial Review | 2., 8. |
| **Provisionally Complex Litigation** | Antitrust/Trade Regulation (03) | ☐ A6003  Antitrust/Trade Regulation | 1., 2., 8. |
| | Construction Defect (10) | ☐ A6007  Construction Defect | 1., 2., 3. |
| | Claims Involving Mass Tort (40) | ☐ A6006  Claims Involving Mass Tort | 1., 2., 8. |
| | Securities Litigation (28) | ☐ A6035  Securities Litigation Case | 1., 2., 8. |
| | Toxic Tort<br>Environmental (30) | ☐ A6036  Toxic Tort/Environmental | 1., 2., 3., 8. |
| | Insurance Coverage Claims<br>from Complex Case (41) | ☐ A6014  Insurance Coverage/Subrogation (complex case only) | 1., 2., 5., 8. |
| **Enforcement of Judgment** | Enforcement<br>of Judgment (20) | ☐ A6141  Sister State Judgment | 2., 9. |
| | | ☐ A6160  Abstract of Judgment | 2., 6. |
| | | ☐ A6107  Confession of Judgment (non-domestic relations) | 2., 9. |
| | | ☐ A6140  Administrative Agency Award (not unpaid taxes) | 2., 8. |
| | | ☐ A6114  Petition/Certificate for Entry of Judgment on Unpaid Tax | 2., 8. |
| | | ☐ A6112  Other Enforcement of Judgment Case | 2., 8., 9. |
| **Miscellaneous Civil Complaints** | RICO (27) | ☐ A6033  Racketeering (RICO) Case | 1., 2., 8. |
| | Other Complaints<br>(Not Specified Above) (42) | ☐ A6030  Declaratory Relief Only | 1., 2., 8. |
| | | ☐ A6040  Injunctive Relief Only (not domestic/harassment) | 2., 8. |
| | | ☐ A6011  Other Commercial Complaint Case (non-tort/non-complex) | 1., 2., 8. |
| | | ☐ A6000  Other Civil Complaint (non-tort/non-complex) | 1., 2., 8. |
| **Miscellaneous Civil Petitions** | Partnership Corporation<br>Governance (21) | ☐ A6113  Partnership and Corporate Governance Case | 2., 8. |
| | Other Petitions<br>(Not Specified Above)<br>(43) | ☐ A6121  Civil Harassment | 2., 3., 9. |
| | | ☐ A6123  Workplace Harassment | 2., 3., 9. |
| | | ☐ A6124  Elder/Dependent Adult Abuse Case | 2., 3., 9. |
| | | ☐ A6190  Election Contest | 2. |
| | | ☐ A6110  Petition for Change of Name | 2., 7. |
| | | ☐ A6170  Petition for Relief from Late Claim Law | 2., 3., 4., 8. |
| | | ☐ A6100  Other Civil Petition | 2., 9. |

LACIV 109 (Rev. 03/11)
LASC Approved 03-04

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

Local Rule 2.0
Page 3 of 4

| SHORT TITLE: Khan v. PHH Mortgage Corporation, et al. | CASE NUMBER |
|---|---|

**Item III. Statement of Location:** Enter the address of the accident, party's residence or place of business, performance, or other circumstance indicated in Item II., Step 3 on Page 1, as the proper reason for filing in the court location you selected.

| REASON: Check the appropriate boxes for the numbers shown under Column C for the type of action that you have selected for this case.<br><br>☐1. ☐2. ☑3. ☐4. ☑5. ☐6. ☐7. ☐8. ☐9. ☐10. | ADDRESS:<br>16206 Alpine Place |
|---|---|
| **CITY:** La Mirada | **STATE:** CA | **ZIP CODE:** 90638 |

**Item IV.** *Declaration of Assignment:* I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that the above-entitled matter is properly filed for assignment to the ___Norwalk___ courthouse in the ___Souteast___ District of the Superior Court of California, County of Los Angeles [Code Civ. Proc., § 392 et seq., and Local Rule 2.0, subds. (b), (c) and (d)].

Dated: ___March 19, 2015___

___(SIGNATURE OF ATTORNEY/FILING PARTY)___

**PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**

1. Original Complaint or Petition.

2. If filing a Complaint, a completed Summons form for issuance by the Clerk.

3. Civil Case Cover Sheet, Judicial Council form CM-010.

4. Civil Case Cover Sheet Addendum and Statement of Location form, LACIV 109, LASC Approved 03-04 (Rev. 03/11).

5. Payment in full of the filing fee, unless fees have been waived.

6. A signed order appointing the Guardian ad Litem, Judicial Council form CIV-010, if the plaintiff or petitioner is a minor under 18 years of age will be required by Court in order to issue a summons.

7. Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the summons and complaint, or other initiating pleading in the case.

**SUPERIOR COURT OF CALIFORNIA**
**COUNTY OF LOS ANGELES**

COURTHOUSE ADDRESS:
12720 NORWALK BLVD NORWALK CA 90650

PLAINTIFF:

DEFENDANT:

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

**MAR 19 2015**

Sherri R. Carter, Executive Officer/Clerk
By Shone dla Thompson, Deputy

**NOTICE OF CASE MANAGEMENT CONFERENCE**

CASE NUMBER:
**VC064664**

TO THE PLAINTIFF(S)/ATTORNEY(S) FOR PLAINTIFF(S) OF RECORD:

You are ordered to serve this notice of hearing on all parties/attorneys of record forthwith, and meet and confer with all parties/attorneys of record about the matters to be discussed no later than 30 days before the Case Management Conference.

Your Case Management Conference has been scheduled at the courthouse address shown above on:

Date **JUL 24 2015**   Time: 1:30   Dept.: F

NOTICE TO DEFENDANT:   THE SETTING OF THE CASE MANAGEMENT CONFERENCE DOES NOT EXEMPT THE DEFENDANT FROM FILING A RESPONSIVE PLEADING AS REQUIRED BY LAW.

Pursuant to California Rules of Court, rules 3.720-3.730, a completed Case Management Statement (Judicial Council form # CM-110) must be filed at least 15 calendar days prior to the Case Management Conference. The Case Management Statement may be filed jointly by all parties/attorneys of record or individually by each party/attorney of record. You must be familiar with the case and be fully prepared to participate effectively in the Case Management Conference.

At the Case Management Conference, the Court may make pretrial orders including the following, but not limited to, an order establishing a discovery schedule; an order referring the case to Alternative Dispute Resolution (ADR); an order reclassifying the case; an order setting subsequent conference and the trial date; or other orders to achieve the goals of the Trial Court Delay Reduction Act (Gov. Code, § 68600 et seq.)

Notice is hereby given that if you do not file the Case Management Statement or appear and effectively participate at the Case Management Conference, the Court may impose sanctions, pursuant to LASC Local Rule 3.10, Code of Civil Procedure sections 177.5, 575.2, 583.150, 583.360 and 583.410, Government Code section 68608, subdivision (b), and California Rules of Court, rule 2.2 et seq.

Dated: _____**MAR 19 2015**_____

_Margaret Miller Bernal_
Judicial Officer   Margaret M. Bernal

**CERTIFICATE OF SERVICE**

I, the below named Executive Officer/Clerk of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that on this date I served the Notice of Case Management Conference upon each party or counsel named below:

☐ by depositing in the United States mail at the courthouse in NORWALK _____, California, one copy of the original filed herein in a separate sealed envelope to each address as shown below with the postage thereon fully prepaid.

☑ by personally giving the party notice upon filing of the complaint.

SHERRI R. CARTER, Executive/Officer Clerk

Dated: _____**MAR 19 2015**_____

By   S. Thompson _____
Deputy Clerk

LACIV 132 (Rev. 3/14)
LASC Approved 10-03
For Optional Use

**NOTICE OF CASE MANAGEMENT CONFERENCE**

Cal. Rules of Court, rules 3.720-3.730
Local Rules, Chapter Three



The Superior Court
12720 NORWALK BOULEVARD
NORWALK, CALIFORNIA 90650
CHAMBERS OF
MARGARET M. BERNAL
SUPERVISING JUDGE

TELEPHONE
(562) 807-724

## TO ATTORNEY OF RECORD

Your case has been assigned to the Master Calendar Trial Delay Reduction Program in Superior Court of California, County of Los Angeles, Southeast District. It is your responsibility as an attorney to immediately familiarize yourself with the detailed provisions of the California Rules of Court re: Civil Case Management Rules as amended August 14, 2009, and Chapter Three of the Los Angeles County Superior Court Rules. A reading of this notice does not relieve you of the responsibility to become intimately familiar with the requirements of these rules. The following critical provisions are summarized for your assistance in avoiding rule violations, and the imposition of sanctions.

## APPLICATION

The California Rules of Court re: Civil Case Management and Chapter Three of the Los Angeles County Superior Court Rules apply to all civil cases filed in or transferred into the Southeast District.

## TIME STANDARDS

Please refer to the NOTICE TO LITIGANTS which is attached for your convenience for information related to Case Management, referenced in the California Rules of Court.

## CASE MANAGEMENT CONFERENCE

Notice of the Initial Case Management conference shall be served by the Clerk on the plaintiff upon the filing of the complaint. The Case Management Conference shall be held on the first available court day following 150 days after the complaint is filed. Plaintiff shall service Notice of Case Management Conference with the Summons and Complaint or, if already served, within 10 days of service of this notice or, if not a served party, when the party appears in the action. Failure of the plaintiff to give complete and immediate notice which causes delay or continuance will result in sanctions.

No later than 15 calendar days before the date set for the Case Management Conference, each party (individually or jointly) must file a Case Management Conference Statement using the mandatory Judicial Council Form No. CM-110. Failure to comply with said rules may result in the imposition of sanctions.

.....continued

# NOTICE TO LITIGANTS
## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

### INFORMATION REGARDING CALIFORNIA RULES OF COURT

This brief synopsis is provided to inform litigants, attorneys, and the general public of changes to the California Rules of Court which affect the processing and filing of limited and unlimited civil cases (with the exception of Unlawful Detainers, Small Claim actions, complex civil cases, probate, guardianship, conservatorship, family law, juvenile court proceedings, and short cause cases).

The full extent of these changes can be found in the California Rules of Court.

**RULE 3.110  (Re Time for Service of Complaint, Cross-Complaint and Response)**
Complaints are to be served and proofs of service filed with the court <u>within 60 days after filing of the complaint</u>.

On amended complaints, the added defendant must be served and proof of service must be filed <u>within 30 days after filing of the complaint</u>.

A Cross-Complaint against a party who has already appeared in the action, <u>must be accompanied by proof of service of the cross-complaint at the time it is filed</u>.

The plaintiff <u>within 10 days</u> after the time for response has elapsed must file a Request for Entry of Default (to avoid sanctions), and must obtain a default judgment <u>within 45 days</u> after entry of default.

**RULE 3.220  (Re Case Cover Sheet)**
Required <u>in each</u> civil limited or unlimited action.

**RULE 3.722 (Re Case Management Conference;)  RULE 3.724 (Duty to Meet and Confer) and  RULE 3.728 (Case Management Order)**
A Case Management Review/Conference must be completed no later than 180 days from filing of the complaint. The Los Angeles Superior Court will set said review/conference date 140 to 160 days from filing of the complaint. Individual courts may set additional earlier status conferences.

Notice of the Case Management Review/Conference will be given to all parties <u>no later than 45 days</u> before the review/conference date. If the court determines that appearances are not necessary at the Case Management Review/ Conference, the court may issue a Case Management Order and notify the parties that no appearance is necessary. <u>No later than 15 calendar days</u> before the date set for the Case Management Review/Conference, each party (individually or jointly) must file a Case Management Conference Statement using the mandatory Judicial Council Form No. CM-110.

Parties <u>must meet and confer</u> to consider the issues identified in Rules 3.724 and 3.727 no later than 30 calendar days before the date set for the initial Case Management Conference. The court will issue a Case Management Order setting a schedule for subsequent CMC's and other proceedings, if necessary.

- 1 -

# *** ATTENTION ***

## TO ALL COUNSEL AND INTERESTED PARTIES

## COMMENCING JUNE 28, 2010
## TENTATIVE ORDERS WILL BE POSTED ON-LINE AT THE
## L.A. SUPERIOR COURT WEBSITE

### WWW.LASUPERIORCOURT.ORG

### DEPARTMENT SE-C LAW & MOTION
### PROCEDURES ARE NOW AS FOLLOWS:

APPEARANCES:

The Court will hear oral arguments on all matters at 8:30 a.m. If all counsel intend to submit on the Tentative Order and do not want oral argument, please advise the clerk, in Department "C", by calling (562-807-7245). If all sides submit on the Tentative Order and the clerk is so advised, the Tentative Order will become the final order of the court and the prevailing party shall give written Notice of Ruling per CRC 3.1312.

If the Moving and Responding parties do not agree to submit on the Tentative Order, the motion will be called as calendared for hearing. There is no need to contact Department "C", as the matter will remain on calendar for hearing.

If the Moving party does not call Department "C" to submit on the Tentative Order and there is no appearance by any party, then the motion(s), at the Court's discretion, may be taken off calendar without ruling on the motion(s).

ORDERS:

The minute order reflecting the Court's Order will constitute the final Order. No additional orders should be submitted to the Court for signature unless required by law or by the Court. Prevailing party shall give written Notice of Ruling per CRC 3.1312.

Minute orders, which constitute the final Order of the Court, will only be sent to the parties, via U.S. mail or facsimile, for the following: OSC re: sanctions, OSC re: contempt or matters taken under submission after oral arguments or briefing. Counsel or parties may request copies of all other minute orders/final orders either at the clerk's office or in writing. If a request is in writing, a self-addressed stamped envelope and the appropriate fee for copies shall be submitted.

EXHIBIT 'B'

SCOTT M. PEARSON (SBN 173880 )
pearsons@ballardspahr.com
**BALLARD SPAHR LLP**
2029 Century Park East, Suite 800
Los Angeles, California 90067-2909
Telephone: (424) 204-4400
Facsimile:  (424) 204-4350

*Attorneys for Defendants PHH Mortgage Corporation*
*and Citibank, National Association, as Trustee for GSAA*
*Home Equity 2007-9*

### SUPERIOR COURT OF THE STATE OF CALIFORNIA

### FOR THE COUNTY OF LOS ANGELES – SOUTHEAST DISTRICT

### NORWALK COURTHOUSE

| | |
|---|---|
| Atikur R. Khan<br>Rubyna Khan,<br><br>                         Plaintiff,<br><br>          v.<br><br>PHH MORTGAGE CORPORATION, a New Jersey Corporation; CITIBANK, National Association, AS TRUSTEE FOR GSAA HOME EQUITY TRUST 2007-9; AZTEC FORECLOSURE CORPORATION, a California Corporation, and all persons or entities unknown claiming any legal or equitable right, title, estate, lien or interest in the property described in this complaint adverse to Plaintiffs' title thereto, and DOES 1 through 25, inclusive,<br><br>                         Defendants. | Case No. VC064664<br><br>**NOTICE TO CLERK AND PLAINTIFF OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT** |

**TO THE CLERK OF THE ABOVE-ENTITLED COURT, PLAINTIFFS ATIKUR R.**

**KHAN AND RUBYNA KHAN, AND THEIR ATTORNEY OF RECORD**:

        **PLEASE TAKE NOTICE** that on April 29, 2015 the original of a Notice of Removal of

Civil Action Under 28 U.S.C. § 1441(b) (Diversity)  ("the Notice") in the above-captioned action

1    was filed with the United States District Court, Central District of California, Western Division.

2    A true and correct copy of the Notice is attached hereto as Exhibit 1.

3

4            The filing of the Notice effects Removal of this Action.

5

6    DATED: April 29, 2015                    Scott M. Pearson (SBN 173880)
                                              **BALLARD SPAHR LLP**

7

8                                             By:  /s/Scott M. Pearson_____

9                                                  Scott M. Pearson

10                                            *Attorneys for Defendants PHH Mortgage*
                                              *Corporation and Citibank, National Association,*
11                                            *as Trustee for GSAA Home Equity 2007-9*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                              2

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

NOTICE TO CLERK AND PLAINTIFF OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT

## PROOF OF SERVICE

I am a resident of the State of California, over the age of eighteen years, and not a party to the within action.  My business address is **BALLARD SPAHR LLP**, 2029 Century Park East, Suite 800, Los Angeles, CA 90067-2909.  On **April 29, 2015**, I served the within documents:

**NOTICE TO CLERK AND PLAINTIFF OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT**

☐ **BY FAX**:  by transmitting via facsimile the document(s) listed above to the fax number(s) set forth below on this date before 5:00 p.m.

☐ **BY HAND:**  by personally delivering the document(s) listed above to the person(s) at the address(es) set forth below.

☒ **BY MAIL**:  by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Los Angeles, California addressed as set forth below.

☐ **BY E-MAIL**:  by attaching an electronic copy of the document(s) listed above to the e-mail address listed below.

☐ **BY OVERNIGHT MAIL**:  by causing document(s) to be picked up by an overnight delivery service company for delivery to the addressee(s) on the next business day.

☐ **BY PERSONAL DELIVERY**:  by causing personal delivery by FIRST LEGAL SUPPORT SERVICES of the document(s) listed above to the person(s) at the address(es) set forth below.

> September J Katke, Esq.
> Alicia Nikkhoo, Esq.
> Consumer Litigation Law Center, APC
> 100 North Citrus Street, Suite 408
> West Covina, California, 91791
> Telephone: 800-787-5616
> Facsimile: 888-909-7947
> sk@consumerlitigationlawcenter.com
> an@consumerlitigationlawcenter.com
>
> Janice L. Celotti, Esq.
> Shapiro, Van Ess, Sherman & Marth, LLP
> 20 Pacifica, Suite 1460
> Irvine, CA 92618
> jcelotti@LOGS.com
> *Attorneys for Defendant Aztec Foreclosure*
> *Corporation*

I am readily familiar with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

1
2

     I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

3

     Executed on **April 29, 2015**, at Los Angeles, California.

4

                   /s/ Scott M. Pearson

5

                   Scott M. Pearson

6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**NOTICE OF DEMURRER AND DEMURRER**